PER CURIAM.
William Thomas Zeigler, Jr., appeals an order of the circuit court denying a motion for postconviction DNA testing pursuant to Florida Rule of Criminal Procedure 3.853 and section 925.11, Florida Statutes.[1] For the reasons set forth below, we affirm the circuit court’s denial of the motion.
I. BACKGROUND
“In 1976, Zeigler was convicted of the first-degree murders of Eunice Zeigler, his wife, and Charlie Mays, a friend, and the second-degree murders of his in-laws, Perry and Virginia Edwards.” Zeigler v. State, 654 So.2d 1162, 1163 (Fla.1995). The facts are set forth in the Court’s opinion on direct appeal. See Zeigler v. State, 402 So.2d 365, 367-68 (Fla.1981), cert. denied, 455 U.S. 1035, 102 S.Ct. 1739, 72 L.Ed.2d 153 (1982). Zeigler pursued post-conviction relief in numerous state court proceedings,[2] and we ordered resentencing in Zeigler v. Dugger, 524 So.2d 419 (Fla.1988). Zeigler’s resentencing occurred in 1989, and we affirmed Zeigler’s two death sentences on appeal. Zeigler v. State, 580 So.2d 127 (Fla.1991), cert. denied, 502 U.S. 946, 112 S.Ct. 390, 116 L.Ed.2d 340 (1991).
Subsequently, Zeigler filed another post-conviction motion and a motion requesting the re-examination and DNA testing of certain evidence. See Zeigler, 654 So.2d at 1163. We affirmed the trial court’s denial of Zeigler’s postconviction motion and the trial court’s decision that Zeigler’s DNA claim was procedurally barred. Id. at 1164. We then stated the following regarding Zeigler’s DNA claim:
Even if there were no procedural bar, we do not believe that Zeigler has presented a scenario under which new evidence resulting from DNA typing would have affected the outcome of the case. Zeigler admitted that he was at the scene of the crime, and there is no dispute that his blood as well as the blood of the four victims was present at the crime scene. The State’s case was not entirely circumstantial, and in order to accept Zeigler’s theory of the case, the jury would have had to disbelieve at least three witnesses who testified at the trial. Zeigler’s request for DNA typing is based on mere speculation and he has failed to present a reasonable hypothesis for how the new evidence would have probably resulted in a finding of innocence. See Jones v. State, 591 So.2d 911, 915 (Fla.1991) (The standard for a new trial based on newly discovered evidence is whether the evidence “would probably produce an acquittal on retri *257 al.”). Acknowledging that the issue before us is whether Zeigler should be allowed to subject the evidence to DNA testing rather than whether he should be granted a new trial based on newly discovered DNA evidence, we find that even if the DNA results comported with the scenario most favorable to Zeigler, he still would not have been able to show that the evidence would have probably produced an acquittal.
Id. (second emphasis added).
Subsequently in 2001, Zeigler filed a motion for DNA testing for the purposes of clemency proceedings and argued that: (1) identifying the source of the blood on Mays’ clothing as the blood of Eunice or Perry could show that Mays was the perpetrator; (2) testing could reveal Zeig-ler’s blood throughout the store, which would discredit the State’s claim that he was not shot in the store; (3) identifying the source of the blood on Zeigler’s clothes could cast doubt on the State’s claim that he had the blood of the victims on his clothing and was therefore involved in the murders; and (4) identifying the source of several hairs found in the store might reveal whether Felton Thomas was in the store on the night of the murders, contradicting his testimony at trial. This time Zeigler’s motion for DNA testing was granted.
After testing was completed, Zeigler filed a motion to vacate his sentences based on the newly discovered evidence and a motion to authorize (nunc pro tunc) DNA testing under rule 3.853. Zeigler argued that the DNA results demonstrated that Perry’s blood was not on Zeigler’s shirt, which allegedly contradicted the State’s theory that Zeigler murdered Perry, and that whoever murdered Perry murdered the others. Furthermore, he argued that the DNA results revealed Perry’s blood was on Mays’ pants, which eor-roborated Zeigler’s trial testimony that Mays was a perpetrator rather than a victim. The trial court denied the motion, and we affirmed. See Zeigler v. State, 967 So.2d 125 (Fla.2007).
Specifically, in 2007, we agreed with the trial court’s findings that the presence of Perry’s blood on Mays’ clothing did not conclusively establish that Mays was the perpetrator and Zeigler was the victim because Mays and Perry were found near each other and, “if Mays were involved in a struggle with [Zeigler] while in close proximity with Perry’s bloodied body, it would not be surprising that Perry’s blood ended up on Mays’ shoes and pants during the altercation.” Id. at 130. Additionally, we agreed with the trial court’s finding that “the presence of Mays’ blood, and the absence of Perry’s, on [Zeigler’s] t-shirt does not conclusively show that [Zeigler] did not hold Perry in a headlock and beat him.” Id. Furthermore, we noted that “in 1995 this Court came to the same conclusion as the trial court while assuming that the DNA evidence would prove more favorable to Zeigler than it actually did.” Id. at 131.
Then, in 2009, Zeigler filed a motion for DNA testing under Florida Rule of Criminal Procedure 3.853, requesting to test his shirts; Mays’ shirts and shoes; Perry’s shirt, pants, tie, tie clip, and fingernails; and Eunice Zeigler’s clothing. Zeigler argued that DNA testing of these items will show (1) that Perry’s blood is not on his clothing, which will demonstrate that he did not kill Perry; (2) that Perry’s blood is on Mays’ clothing, which demonstrates that Mays was the perpetrator and renders the trial testimony of Felton Thomas unreliable; and (3) that the blood spatter on his shirt is not attributable to the beating of Mays. Following the evidentiary hearing, the circuit court denied Zeigler’s motion.
*258 II. ANALYSIS
Zeigler now appeals the denial of his motion for postconviction DNA testing to this Court. Although the circuit court’s failure to make the findings specifically required by rule 3.858(c)(5) was improper, we affirm the circuit court’s denial of Zeig-ler’s motion. Zeigler’s claims are procedurally barred by collateral estoppel, and, even if Zeigler’s claims were not procedurally barred, he would not be entitled to relief on the merits.[3]
A. Collateral Estoppel
Zeigler argues that his rule 3.853 motion is not barred by the principle of collateral estoppel, and furthermore that collateral estoppel, even if applicable, cannot be applied because it would result in a manifest injustice. We disagree.
In Florida, collateral estoppel prevents the same parties from relitigating issues that have already been fully litigated and determined. See State v. McBride, 848 So.2d 287, 290-91 (Fla.2003). In his present motion, Zeigler is seeking additional DNA testing based on variations of the same arguments he made in his previous motion for DNA testing in 2001, and we already affirmed the circuit court’s decision of these issues against him in Zeigler, 967 So.2d at 125.
Specifically, in his current motion, Zeig-ler argues that (1) additional testing of his shirts will show that Perry’s blood is not on his clothing and, therefore, he was not the assailant; (2) additional testing on Mays’ clothing will reveal Perry’s blood, which demonstrates that Mays was the actual perpetrator; and (3) additional testing on Zeigler’s shirts will show whether the blood spatter on them is really from Mays. However, we previously addressed these claims and held that the absence of Perry’s and the presence of Mays’ blood on Zeigler’s clothing did not establish that Zeigler was not the perpetrator. Id. at 130-31. Likewise, we also held that the presence of Perry’s blood on Mays’ clothing did not establish that Mays was the perpetrator rather than a victim. Id. Thus, we already decided these same issues against Zeigler.
Accordingly, Zeigler’s claims are barred by collateral estoppel, and we affirm the circuit court’s denial of his motion for post-conviction DNA testing.
B. The Merits
Additionally, on the merits, we conclude that, even if Zeigler’s claims were not barred by collateral estoppel, Zeigler would still not be entitled to relief because he has failed to demonstrate how the results of the additional DNA testing would give rise to a reasonable probability of acquittal or a lesser sentence.
Under rule 3.853, the motion must include, “a statement that the movant is innocent and how the DNA testing requested by the motion will exonerate the movant of the crime for which the movant was sentenced, or a statement how the DNA testing will mitigate the sentence received by the movant for that crime.” Fla. R.Crim. P. 3.853(b)(3). “It is the defendant’s burden to explain, with reference to specific facts about the crime and the items requested to be tested, how the DNA testing will exonerate the defendant of the crime or will mitigate the defendant’s sentence.” Consalvo v. State, 3 So.3d 1014, 1016 (Fla.2009) (quoting Robinson v. State, 865 So.2d 1259, 1265 (Fla. *259 2004)); Willacy v. State, 967 So.2d 131, 145 (Fla.2007); Hitchcock v. State, 866 So.2d 28, 27-28 (Fla.2004); see also Scott v. State, 46 So.3d 529, 533 (Fla.2009) (affirming denial of DNA testing because the defendant could not show how the requested DNA testing “would give rise to a reasonable probability that he did not commit the crime”); King v. State, 808 So.2d 1237, 1247-49 (Fla.2002) (affirming denial of DNA testing when defendant could not show that the result would raise a reasonable probability of acquittal or a life sentence). In order to determine whether DNA testing is warranted, the court must determine “[w]hether there is a reasonable probability that the movant would have been acquitted or would have received a lesser sentence if the DNA evidence had been admitted at trial.” Fla. R.Crim. P. 3.853(c)(5)(C).
In this case, Zeigler has not met his burden of showing how the results of the DNA testing would give rise to a reasonable probability of a different outcome. First, he fails to present any viable arguments why more testing that shows more absence of Perry’s blood on Zeigler’s clothing would negate our previous conclusion that the absence of Perry’s blood on Zeig-ler’s clothing does not establish that he was not the perpetrator. Additionally, although Mr. Kish, a bloodstain expert, testified at the 2011 evidentiary hearing that he believed the six spatter samples he had selected on Zeigler’s clothing for additional testing would reveal whether Zeigler was in close proximity to Perry when he died, we conclude that the absence of Perry’s blood in these areas would not prove that Zeigler was not the perpetrator. Kish acknowledged at the evidentiary hearing that, even though the areas he selected for additional testing on Zeigler’s clothing were intended to result in a representative sampling of all the blood spatter stains on the garment, there was no way to know for sure that all of the contributors to the blood on Zeigler’s clothing would be identified unless every single bloodstain was tested. And Mr. Weiss, an expert in DNA identification, testified at the previous evi-dentiary hearing in 2004, that “it was possible to miss blood on the shirt, due to deterioration and improper storage” and that “[i]t was also possible to have a mixed stain, from multiple contributors, in the same area.” Zeigler, 967 So.2d at 130 (quoting trial court order). Therefore, even if additional testing on the six areas again revealed the absence of Perry’s blood, it still would not give rise to a reasonable probability of acquittal or a lesser sentence.
Second, Zeigler has failed to explain how further testing of Mays’ clothing and the discovery of more of Perry’s blood on Mays’ clothing would give rise to a reasonable probability of acquittal or a lesser sentence. We previously stated that the presence of Perry’s blood on Mays’ clothing did not prove that Zeigler was not the perpetrator because, “if Mays were involved in a struggle with [Zeigler] while in close proximity with Perry’s bloodied body, it would not be surprising that Perry’s blood ended up on Mays’ shoes and pants during the altercation.” Id. at 130 (quoting trial court order). Moreover, the bloodstain expert testified at the 2011 evi-dentiary hearing that he had examined Mays’ clothing and shoes and did not believe that additional testing needed to be performed on these items.
Third, Zeigler has failed to explain how further testing on his shirts and the discovery of more of Mays’ blood on his shirt will give rise to a reasonable probability of acquittal or lesser sentence when the prior testing already determined that Mays’ blood is on Zeigler’s shirt, and we found this was not exculpatory. See id. Fur *260 thermore, Zeigler completely fails to address how DNA testing of Perry’s clothing, tie, tie clip, and fingernails, and Eunice Zeigler’s clothing -will exonerate him or mitigate his sentence.
Accordingly, because Zeigler has failed to present an argument giving rise to a reasonable probability that he would be acquitted or would have received a lesser sentence, he is not entitled to the requested DNA testing.
III. CONCLUSION
For the foregoing reasons, we affirm the circuit court’s denial of Zeigler’s motion for postconviction DNA testing.
It is so ordered.
POLSTON, C.J., and PARIENTE, LEWIS, LABARGA, and PERRY, JJ., concur.
QUINCE, J., concurs in result only.
CANADY, J., recused.

. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const.

. See Zeigler v. State, 452 So.2d 537 (Fla.1984) (remanded for an evidentiary hearing on his postconviction claim of judicial bias); Zeigler v. State, 473 So.2d 203 (Fla.1985) (affirmed denial of judicial bias claim); State v. Zeigler, 494 So.2d 957 (Fla.1986) (reversed the trial court’s order granting an evidentiary hearing on postconviction claim that the trial judge failed to consider nonstatutory mitigating circumstances).

. We agree with Zeigler that his motion for postconviction DNA testing was not barred because it was successive. See Fla. R.Crim. P. 3.853(b)(2), (d) (stating that rule 3.853 motions "may be filed or considered at any time following the date that the judgment and sentence in the case becomes final” and noting the possibility of additional DNA testing).