# Supreme Court of Florida

_____

No. SC16-8
_____

**CARY MICHAEL LAMBRIX,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

_____

No. SC16-56
_____

**CARY MICHAEL LAMBRIX,**
Petitioner,

vs.

**JULIE L. JONES, etc.,**
Respondent.

[March 9, 2017]

PER CURIAM.

Cary Michael Lambrix is a prisoner under sentence of death for whom a

death warrant was signed. This Court stayed the death warrant as a result of the

United States Supreme Court's decision in Hurst v. Florida, 136 S. Ct. 616, 619

(2016), to determine if that opinion was entitled to retroactive application to a death sentence that was final in 1986.

Lambrix was convicted and sentenced to death for the 1983 first-degree murder of two victims after Lambrix had invited them to his trailer to eat dinner. Lambrix v. State, 494 So. 2d 1143, 1145 (Fla. 1986). On direct appeal, this Court upheld Lambrix's two convictions of first-degree murder and his two death sentences. Id. at 1148.

After the Governor signed a death warrant on November 30, 2015, and the execution was set for February 11, 2016, this Court entered a scheduling order, providing a deadline by which Lambrix could file any successive motions for postconviction relief. Lambrix filed both a successive motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.851 and a motion for postconviction DNA testing pursuant to Florida Rule of Criminal Procedure 3.853. On December 21, 2015, the postconviction court summarily denied both Lambrix's successive motion for postconviction relief and his motion for DNA testing. Lambrix appealed these orders to this Court and filed a petition for writ of habeas corpus. After the United States Supreme Court issued its opinion in Hurst v. Florida, 136 S. Ct. 616, this Court stayed his execution and permitted supplemental briefing and oral argument in order to fully consider the impact of Hurst v. Florida in this case. In accordance with our opinion in Asay v. State, 41 Fla. L. Weekly

S646, 2016 WL 7406538 (Fla. Dec. 22, 2016), we conclude that Lambrix is not

entitled to a new penalty phase based on Hurst v. Florida, and our opinion in Hurst

v. State (Hurst), 202 So. 3d 40 (Fla. 2016), and we further reject the other grounds

for relief that he raised as devoid of merit. Accordingly, we affirm the

postconviction court's denial of relief and also deny Lambrix's separate petition

for habeas corpus.

## FACTS AND PROCEDURAL HISTORY

The facts of this case are set forth in Lambrix's direct appeal of his

conviction and sentence of death:

> On the evening of February 5, 1983, Lambrix and Frances
> Smith, his roommate, went to a tavern where they met Clarence
> Moore, a/k/a Lawrence Lamberson, and Aleisha Bryant. Late that
> evening, they all ventured to Lambrix' trailer to eat spaghetti. Shortly
> after their arrival, Lambrix and Moore went outside. Lambrix
> returned about twenty minutes later and requested Bryant to go
> outside with him. About forty-five minutes later Lambrix returned
> alone. Smith testified that Lambrix was carrying a tire tool and had
> blood on his person and clothing. Lambrix told Smith that he killed
> both Bryant and Moore. He mentioned that he choked and stomped
> on Bryant and hit Moore over the head. Smith and Lambrix
> proceeded to eat spaghetti, wash up and bury the two bodies behind
> the trailer. After burying the bodies, Lambrix and Smith went back to
> the trailer to wash up. They then took Moore's Cadillac and disposed
> of the tire tool and Lambrix' bloody shirt in a nearby stream.

Lambrix, 494 So. 2d at 1145. Lambrix raised four issues on direct appeal, which this Court denied.[1]

The Governor signed a death warrant for Lambrix, scheduling his execution for November 30, 1988. In response to the death warrant, Lambrix then filed an initial postconviction motion, which was summarily denied. This Court affirmed the summary denial, concluding that even taking all of Lambrix's allegations as true, there was no prejudice.[2] Lambrix v. State, 534 So. 2d 1151, 1153-54 (Fla. 1988). The dissent asserted that an evidentiary hearing should have been held. Id. at 1154 (Kogan, J., dissenting). Lambrix also filed a petition for writ of habeas corpus in this Court, alleging that his appellate counsel was ineffective for failing to raise numerous claims, including: (1) the trial court erred in denying a motion for individual and sequestered voir dire concerning the effect of pretrial publicity;

_____

1. On direct appeal, Lambrix asserted: (1) the exclusion of jurors opposed to the death penalty is unconstitutional and the trial court erred in excluding one of the potential jurors for cause; (2) the trial court violated his right to confront witnesses by limiting his cross-examination of the state's key witness, Frances Smith; (3) the trial court erred in restricting the cross-examination of Connie Smith (no relation to Frances), a special agent with the Florida Department of Law Enforcement; and (4) the trial court erred in allowing the medical examiner, Dr. Schultz, to use the term "homicide" in reference to the deaths of the victims. Lambrix, 494 So. 2d at 1145-48.

2. On appeal, Lambrix asserted that his trial counsel was ineffective because: (1) counsel failed to develop additional evidence that would have permitted a jury instruction on voluntary intoxication, and (2) counsel failed to introduce evidence of Lambrix's alcoholism during the penalty phase of the trial.

(2) it was error for Lambrix not to be present during a part of voir dire; (3) it was error for the court to have approved certain stipulations in Lambrix's absence while the jury was being selected; and (4) the trial court erred in not instructing the jury as to voluntary intoxication. Lambrix v. Dugger, 529 So. 2d 1110, 1111-12 (Fla. 1988). This Court denied relief. Id. at 1112.

In addition, either through counsel or in a pro se capacity, Lambrix has filed numerous successive petitions for postconviction relief and successive habeas petitions before the trial court and this Court—all of which have been denied. See, e.g., Lambrix v. State, 559 So. 2d 1137, 1138 (Fla. 1990) (affirming the summary denial of a pro se petition for writ of habeas corpus, filed with the trial court, in which Lambrix asserted that his collateral counsel was ineffective for failing to raise a claim of juror misconduct because one of the jurors in his second trial failed to disclose that she had been on the venire prior to Lambrix's first trial); Lambrix v. Singletary, 641 So. 2d 847, 848-49 (Fla. 1994) (denying a successive habeas petition that asserted an entitlement to relief based on Espinosa v. Florida, 505 U.S. 1079 (1992), challenged various aggravators, and raised an ineffective assistance of counsel claim); Lambrix v. State, 698 So. 2d 247, 248 (Fla. 1996), cert. denied, 522 U.S. 1122 (1998) (affirming the summary denial of a successive postconviction motion that raised new ineffective assistance of counsel claims and alleged a Faretta v. California, 422 U.S. 806 (1975), violation); Lambrix v. State,

39 So. 3d 260, 275 (Fla. 2010), cert. denied, 562 U.S. 1145 (2011) (affirming the denial of multiple claims including newly discovered evidence claims); Lambrix v. State, 124 So. 3d 890, 904 (Fla. 2013), cert. denied, 134 S. Ct. 1789 (2014) (affirming the denial of two successive postconviction motions and denying a writ petition in a consolidated opinion). Lambrix also filed numerous other pleadings in this Court that have been denied or dismissed.[3]

Lambrix has likewise filed federal pleadings before the federal district court, including a Petition for Writ of Habeas Corpus brought pursuant to 28 U.S.C. § 2254 in 1988. After granting an evidentiary hearing on the motion, the federal district court denied relief and the Eleventh Circuit Court of Appeals affirmed the denial of relief. Lambrix v. Dugger, No. 88-12107-CIV-Zloch (S.D.

---

3. See, e.g., Lambrix v. Friday, 525 So. 2d 879 (Fla. 1988) (table decision dismissing extraordinary relief) (Case No. 71,818); Lambrix v. Martinez, 534 So. 2d 400 (Fla. 1988) (table decision dismissing mandamus) (Case No. 73,120); Lambrix v. Reese, 705 So. 2d 902 (Fla. 1998) (table decision denying mandamus) (Case No. 91,724); Lambrix v. State, 727 So. 2d 907 (Fla. 1998) (table decision denying prohibition) (Case No. 94,221); Lambrix v. State, 766 So. 2d 221 (Fla. 2000) (table decision dismissing mandamus) (Case No. SC00-744); Lambrix v. State, 900 So. 2d 553 (Fla. 2005) (table decision dismissing mandamus) (Case No. SC04-2020); Lambrix v. State, 944 So. 2d 345 (Fla. 2006) (table decision dismissing mandamus) (Case No. SC06-38); Lambrix v. State, 74 So. 3d 1083 (Fla. 2011) (unpublished order denying petition for writ of mandamus and/or writ of prohibition) (Case No. SC10-1517); Lambrix v. Crews, 118 So. 3d 221 (Fla. 2013) (unpublished order denying claim based on Holland v. Florida, 560 U.S. 631 (2010)) (Case No. SC11-1138); Lambrix v. State, 139 So. 3d 298 (Fla.), cert. denied, 135 S. Ct. 174 (2014) (unpublished order denying claim based on Martinez v. Ryan, 132 S. Ct. 1309 (2012)) (Case No. SC13-1471).

Fla. May 12, 1992), aff'd 72 F.3d 1500 (11th Cir. 1996). In these federal proceedings, Lambrix challenged whether he was entitled to relief based on his Espinosa claim. The United States Supreme Court ultimately affirmed the denial of relief on that claim, holding that Espinosa was not dictated by then-existing precedent, but announced a "new rule" as defined in Teague,[4] and does not apply retroactively. Lambrix v. Singletary, 520 U.S. 518, 528 (1997).

In addition, Lambrix filed numerous other pro se pleadings in federal court that have been denied. See, e.g., Lambrix v. Jones, 136 S. Ct. 541 (2015) (denying petition for writ of certiorari); In re Lambrix, 136 S. Ct. 537 (2015) (denying petition for writ of habeas corpus); In re Lambrix, 131 S. Ct. 2907 (2011) (denying petition for writ of habeas corpus); In re Lambrix, 776 F.3d 789, 793 (11th Cir. 2015) (denying Lambrix's application for leave to file a successive § 2254 petition, because the claims were precluded by the law-of-the-case doctrine and/or the prior-panel-precedent rule); Lambrix v. Sec'y, Fla. Dept. of Corrs., 756 F.3d 1246, 1249 (11th Cir. 2014) (affirming the district court's denial of Lambrix's motion for substitute counsel and denying his assertion that he was entitled to raise procedurally-defaulted claims in a successive § 2254 habeas petition based on Martinez v. Ryan, 132 S. Ct. 1309 (2012)); In re Lambrix, 624 F.3d 1355 (11th

---

4. Teague v. Lane, 489 U.S. 288 (1989).

Cir. 2010) (denying leave to file a successive petition for writ of habeas corpus). Lambrix filed his latest Motion for Relief from Judgement, which the federal district court denied on December 22, 2015, and subsequently denied the motion for certificate of appealability on January 28, 2016.

After the Governor signed a death warrant on November 30, 2015, Lambrix filed both a successive motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.851 and a motion for postconviction DNA testing pursuant to Florida Rule of Criminal Procedure 3.853. On December 21, 2015, the postconviction court summarily denied both Lambrix's successive motion for postconviction relief and his motion for DNA testing. Lambrix appeals these orders and has filed a petition for writ of habeas corpus.

## ANALYSIS

On appeal to this Court, Lambrix raises the following claims: (1) whether he was deprived of effective assistance of counsel based on a conflict of interest and whether a United States v. Cronic, 466 U.S. 648 (1984), violation occurred; (2) whether he was denied his due process rights and a full and fair hearing on his DNA motion; (3) whether he was denied full and fair postconviction proceedings; and (4) whether the totality of punishment that the State has imposed on him is unconstitutional. In addition, Lambrix filed a petition for writ of habeas corpus, raising three additional claims: (1) whether his constitutional rights were violated

by the jury's nonunanimous recommendation for death during the penalty phase; (2) whether his postconviction judge was biased; and (3) whether the clemency proceedings violated his constitutional rights. After the United States Supreme Court issued its opinion in Hurst v. Florida, this Court permitted supplemental briefing and oral argument so that the Court could fully consider the impact of Hurst v. Florida in this case. Following oral argument this Court issued its opinion in Hurst on remand from the United States Supreme Court. We address each of these claims in turn.

## POSTCONVICTION MOTION

### Conflict of Interest and Cronic Claim

In his first claim on appeal, Lambrix contends that his trial counsel had a conflict of interest. As support for this claim, Lambrix relies on an FBI report that allegedly reflects that at the time of trial, a member of the defense team believed Lambrix was a difficult client and had lied to them—a document that was received by defense counsel in 1999. Lambrix frames this claim both as a conflict of interest claim and a claim supported by Cronic, 466 U.S. at 648. The postconviction court denied this claim, first concluding that the FBI report, raised now, is untimely and procedurally barred since defense counsel recognized that Lambrix's prior attorney received the document in 1999, and thus the claim was clearly not raised within the one-year deadline from the time that the evidence was

or could have been discovered. Further, the postconviction court held that even on the merits, the claim should be denied, explaining:

> [T]he person giving the statement merely indicated to the FBI agent that Defendant was a difficult client, had not been forthcoming, and had threatened to complain about counsel in collateral proceedings if his trial outcome was not favorable. The record reflects that these statements have all turned out to be true. There is no actual conflict of interest on the part of trial counsel based solely on the statement of an unknown individual from the Public Defender's Office to the FBI agent.

The postconviction court did not err in denying relief.

Lambrix's claim is untimely. As this is a successive postconviction motion filed more than one year after the convictions and sentences became final, in order for this claim to be considered, it must meet one of three narrow exceptions: (1) the facts on which the claim is predicated were not known to himself or his attorney and "could not have been ascertained by the exercise of due diligence;" (2) a fundamental constitutional right that was not established within the one-year time frame after the judgment and sentence became final and which has been held to apply retroactively; or (3) postconviction counsel negligently failed to file a full or timely motion. See Fla. R. Crim. P. 3.851(d)(2).

In this case, Lambrix asserts he can raise this claim based on newly discovered evidence and relies on an FBI report that he acknowledges his counsel received in 1999. "To be considered timely filed as newly discovered evidence, the successive rule 3.851 motion was required to have been filed within one year of

- 10 -

the date upon which the claim became discoverable through due diligence."

Jimenez v. State, 997 So. 2d 1056, 1064 (Fla. 2008).

While Lambrix recognizes that this "new" evidence was received seventeen years ago, he asks this Court to excuse the extreme untimeliness for two reasons. First, he asserts that three days after his counsel received the annotated FBI records, his counsel at Capital Collateral Regional Counsel-Middle Region (CCRC-Middle) was removed from the case, and the judge appointed registry counsel and later CCRC-South. By the time that Lambrix's case was finally moved to CCRC-South and his new attorneys obtained all of the files, more than one year had passed from the date CCRC-Middle received the report. However, Lambrix never explains how such a justification would excuse a seventeen-year delay, particularly when Lambrix has filed numerous successive postconviction motions since 1999 without raising this claim. In essence, Lambrix is asserting that no time limit should exist in this case—a clearly meritless position.

Second, Lambrix contends that there was never an opportunity to file his Cronic claim in a timely manner because a 2007 order by the postconviction court prohibited any ineffective assistance of counsel claims to be litigated after the initial rounds of postconviction litigation ended in 1992. However, if Lambrix sought to raise a claim to the postconviction court and was denied the opportunity, he was required to appeal it in those proceedings, as opposed to waiting until a

death warrant was signed. Accordingly, we deny this claim because it is untimely and procedurally barred. See, e.g., Porter v. State, 653 So. 2d 374, 378 (Fla. 1995) (affirming summary denial of conflict of interest claim where the information which formed the basis of the conflict claim was available to the defendant).

Even if we addressed this claim on the merits, the allegations raised are inadequate to establish a Cronic claim. Specifically, in Cronic, the United States Supreme Court held that the Sixth Amendment requires that the accused have "counsel acting in the role of an advocate" by requiring defense counsel to put the prosecution's case to meaningful adversarial testing and that if no meaningful adversarial testing occurred at all, a defendant does not need to specifically show prejudice. 466 U.S. at 656-59; see also Stano v. Dugger, 921 F.2d 1125, 1152 (11th Cir. 1991) (en banc) (holding that Cronic "created an exception to the Strickland [ v.Washington, 466 U.S. 668 (1984),] standard for ineffective assistance of counsel and acknowledged that certain circumstances are so egregiously prejudicial that ineffective assistance of counsel will be presumed"). In Cronic, however, the Supreme Court held that the Sixth Amendment was not violated—despite the fact that defense counsel was given only twenty-five days to prepare for trial, that counsel was young and inexperienced in criminal matters, that the charges were complex, and that some witnesses were not easily

accessible—in the absence of showing of actual ineffectiveness. <u>Cronic</u>, 466 U.S. at 665-67.

This case does not involve the situation required to create a <u>Cronic</u> violation, which is limited to circumstances where "the assistance of counsel has been denied entirely or withheld during a critical stage of the proceeding such that the 'likelihood that the verdict is unreliable is so high that a case-by-case inquiry is unnecessary.' " <u>Crain v. State</u>, 78 So. 3d 1025, 1042 n.11 (Fla. 2011) (quoting <u>Chavez v. State</u>, 12 So. 3d 199, 212 (Fla. 2009)). In this case, counsel was never denied so Lambrix cannot rely on the per se rule from <u>Cronic</u> to avoid establishing prejudice. <u>See, e.g.</u>, <u>id.</u> (denying a <u>Cronic</u> claim where the assistance of counsel was not denied entirely or withheld during a critical stage of the proceeding). Thus, this claim is meritless.

**Full and Fair Hearing on Lambrix's DNA Motion**

In his second claim, Lambrix challenges the postconviction court's denial of his motion for DNA testing, which summarily denied the motion as follows:

> 1. Defendant requests DNA testing of the female victim's clothing, the tire iron, and the t-shirt wrapped around the tire iron. The motion indicates that Defendant believes the latter two items are in the custody of the Glades Clerk, but that he has been unable to locate the female victim's clothing. Defendant believes that had DNA evidence that did not match Defendant been presented to the jury, it would have been "more likely" to present a reasonable doubt to the jury, leading to an acquittal.
> 2. Rule 3.853 requires that a motion for DNA testing must demonstrate (1) a statement of the facts relied upon in support of the

- 13 -

motion, including a description of the physical evidence containing DNA to be tested and, if known, the present location or last known location of the evidence and how it originally was obtained; (2) a statement that the evidence was not previously tested for DNA, or a statement that the results of previous DNA testing were inconclusive and that subsequent scientific developments in DNA testing techniques likely would produce a definitive result establishing that the movant is not the person who committed the crime; (3) a statement that the movant is innocent and how the DNA testing requested by the motion will exonerate the movant of the crime for which the movant was sentenced, or a statement how the DNA testing will mitigate the sentence received by the movant for that crime; and (4) a statement that identification of the movant is a genuinely disputed issue in the case and why it is an issue or an explanation of how the DNA evidence would either exonerate the defendant or mitigate the sentence that the movant received.

3. Defendant has failed to make facially or legally sufficient allegations. While Defendant asserts his innocence, he has failed to demonstrate how testing those items would exonerate him or mitigate his sentence. Further, Defendant's identity is not a genuinely disputed issue in this case, since Defendant admits he was present, and asserts the defense of self defense. Defendant filed a prior 3.853 motion in conjunction with his fourth successive 3.851 motion, seeking testing of the hairs found on the t-shirt, which were both denied on the merits. Defendant concedes that the female victim's clothing is missing. Apparently, inquiries to the Lee, Hendry and Glades Clerks, and the Hendry and Lee County Sheriff's Offices resulted in responses that those locations did not have that evidence. The agencies deny having any physical evidence. Letters between defense counsel and the Glades County Sheriff's Office indicate that a hurricane damaged the storage facility, and the evidence in this case was likely destroyed with the files. Copies are attached. Thus, it appears that the victim's clothing is unavailable, through no fault of the State.

4. In this case, even if the items were available to be tested, it is unlikely that, after three decades, there would be any viable DNA remaining to test, especially since the tire iron and t-shirt were found submerged in a stream, which would have washed away any blood evidence. Indeed, Defendant concedes that the FDLE report indicated no blood was found on those two items. Where a defendant cannot show that DNA will prove or negate a material fact, a request for

testing should be denied. Scott v. State, 46 So. 3d 529 (Fla. 2009). Since the female victim was strangled, and Defendant admits he was involved in an altercation with the male victim, he cannot reasonably show how DNA testing of these items would give rise to a reasonable probability that he did not commit the crimes, or would result in a lesser sentence. Even if testing of the evidence found DNA and demonstrated that the DNA did not match Defendant, it would not prove that Defendant was not present at the crime scene or the perpetrator of the crime. This kind of speculation has been held as a basis for denying a Rule 3.853 motion. See Overton v. State, 976 So. 2d 536, 568-570 (Fla. 2007). As such, the evidence would not prove or negate a material fact, and would likely be inadmissible and irrelevant at trial or any future hearings.

5. Defendant has not established that the evidence would exonerate him, or result in a lesser sentence. The Court finds there is no reasonable probability that Defendant would have been acquitted or received a lesser sentence if the DNA results had been admitted at trial, especially in light of the other overwhelming evidence adduced at trial, including the testimony of witnesses that the Defendant admitted killing the victims. DNA testing will not be permitted if the requested DNA testing would shed no light on the defendant's guilt or innocence. Consalvo v. State, 3 So. 3d 1014, 1016 (Fla. 2009). The Court notes that, while Rule 3.853 allows for a motion to be filed at any time, Defendant had three decades to bring such a motion, and instead waited to file this motion until the death warrant had been signed. It appears that the motion was filed solely for the purposes of delaying the execution.

As this Court has previously set forth when addressing the denial of a previous motion for DNA testing that Lambrix filed, "[i]t is the defendant's burden to explain, with reference to specific facts about the crime and the items requested to be tested, how the DNA testing will exonerate the defendant of the crime or will mitigate the defendant's sentence." Lambrix, 124 So. 3d at 895-96 (quoting Scott v. State, 46 So. 3d 529, 533 (Fla. 2009)). "[A] trial court does not err in denying a

- 15 -

motion for DNA testing where the defendant cannot show that there is a reasonable probability that the absence or presence of DNA at a crime scene would exonerate him or lessen his sentence." Id. at 896.

Lambrix has failed to explain how DNA testing of any of the items would lead to his exoneration of the crime or a reduced sentence. As to the tire iron and the shirt wrapped around the tire iron, as Lambrix himself acknowledges, prior testing already established that there was no blood on these items—an unsurprising result since the items were disposed of in a stream. Regarding Bryant's clothing, Lambrix provides no reason how Moore's DNA on Bryant would exonerate Lambrix. The facts already established that Lambrix and Smith invited a couple they met at a bar to their trailer—Bryant and Moore. Further, DNA testing was performed on Bryant's panties. Simply alleging that Bryant was found nude from the waist down and Moore's DNA may be on her clothing does not establish how that would exonerate Lambrix of killing both Bryant and Moore, particularly when Moore and Bryant were together that evening. As this Court has held, "[i]t is the defendant's burden to explain, with reference to specific facts about the crime and the items requested to be tested, how the DNA testing will exonerate the defendant of the crime or will mitigate the defendant's sentence." Zeigler v. State, 116 So. 3d 255, 258 (Fla. 2013) (quoting Consalvo v. State, 3 So. 3d 1014, 1016 (Fla. 2009)). Lambrix has not done so.

Accordingly, Lambrix is not entitled to relief.

## Full and Fair Postconviction Proceedings

As his third claim, Lambrix states vague and conclusory allegations that this Court's December 1, 2015, scheduling order, providing a deadline by which Lambrix could file any successive motions for postconviction relief, prevented him from making the record he feels would be necessary in the case, but never states exactly what records he was denied based on the scheduling order. This claim is insufficiently pled. Further, a review of the evidentiary hearing and the circuit court's order likewise does not support the contention that the circuit court was unable to undertake any specific action based on the schedule. As this Court has repeatedly held, conclusory allegations do not establish a legally sufficient claim for postconviction relief. Troy v. State, 57 So. 3d 828, 840 (Fla. 2011). Further, if Lambrix had raised a meritorious claim and needed additional time to litigate the claim or to ensure an accurate and full record, a stay could be granted. He simply has not raised any claim that requires a stay.

Further, to the extent that Lambrix is challenging the constitutionality of section 119.19, Florida Statutes, and Rule 3.852, he has previously raised this same challenge, which this Court denied as follows:

> As this Court has consistently upheld the constitutionality of section 119.19 and rule 3.852, we deny Lambrix's constitutional challenge to section 119.19 and rule 3.852 without further discussion. See, e.g., Wyatt v. State, 71 So. 3d 86, 111 (Fla. 2011) (denying claim

that these provisions unconstitutionally restrict a defendant's right to public-records access because they impermissibly mandate that his demand for public records not be "overly broad or unduly burdensome" and that he make his own search for records).

Lambrix, 124 So. at 895 n.2.  Thus, Lambrix is not entitled to relief.

**Whether the Totality of the Punishment is Unconstitutional**

In his final postconviction claim, Lambrix alleges that the totality of the punishment the State has imposed on him, which now includes not just execution, but also more than three decades of being on death row, violates the Eighth Amendment.  In support, Lambrix relies on language contained in Justice Stevens' memorandum opinion regarding the United States Supreme Court's denial of certiorari review in Lackey v. Texas, 514 U.S. 1045 (1995).

This Court has consistently rejected this claim, including for inmates who have been on death row longer than Lambrix:

> Correll next contends that the length of time he has spent on death row, over twenty-nine years, constitutes cruel and unusual punishment. . . .  [T]his Court has repeatedly rejected such challenges. See, e.g., Pardo v. State, 108 So. 3d 558, 569 (Fla. 2012) (twenty-four years); Johnston v. State, 27 So. 3d 11, 27 (Fla. 2010) (almost twenty-five years); Tompkins v. State, 994 So. 2d 1072, 1085 (Fla. 2008) (twenty-three years); Booker v. State, 969 So. 2d 186, 200 (Fla. 2007) (almost thirty years).  Further, executions of inmates who have been on death row as long as, or longer than, Correll have been permitted. See, e.g., Ferguson v. State, 101 So. 3d 362, 366 (Fla. 2012) (more than thirty years); Waterhouse v. State, 82 So. 3d 84, 87 (Fla. 2012) (more than thirty-one years); Valle v. State, 70 So. 3d 530, 552 (Fla. 2011) (thirty-three years).  Correll is not entitled to relief on this claim.

- 18 -

Correll v. State, 184 So. 3d 478, 486 (Fla.), cert. denied, Nos. 15-6551 & 15A424, 2015 WL 6111441 (Oct. 29, 2015). Further, Lambrix has contributed to the lengthy time and delay by continually challenging his convictions and sentences. He "cannot now contend that his punishment has been illegally prolonged because the delay in carrying out his sentence is in large part due to his own actions in challenging his conviction[s] and sentence[s]." Valle v. State, 70 So. 3d 530, 552 (Fla. 2011) (quoting Tompkins, 994 So. 2d at 1085).

Thus, we deny this claim.

**HABEAS PETITION**

**Nonunanimous Jury Recommendation for Death and Hurst Challenge**

In his motion for postconviction relief, Lambrix raised a Sixth Amendment claim based on Ring v. Arizona, 536 U.S. 584 (2002), arguing that his case should be stayed pending the outcome of the United States Supreme Court's decision in Hurst v. Florida, 136 S. Ct. 616 (2016). The postconviction court summarily denied the claim, relying on our decision in Hurst v. State, 147 So. 3d 435 (Fla. 2014), which denied a Ring claim based on prior United States Supreme Court precedent that upheld Florida's capital sentencing scheme. Before this Court, Lambrix raised his Ring/Hurst v. Florida claim in his habeas petition, rather than in the appeal of his postconviction motion. While this case was pending, the United States Supreme Court reversed our decision in Hurst v. State and, for the first time,

- 19 -

expressly overruled <u>Spaziano v. Florida</u>, 468 U.S. 447 (1984), and <u>Hildwin v. Florida</u>, 490 U.S. 638 (1989), two decisions that had held Florida's capital sentencing scheme did not violate the Sixth Amendment. <u>Hurst v. Florida</u>, 136 S. Ct. at 624. Lambrix contends that he is entitled to retroactive application of <u>Hurst v. Florida</u> and thus, his sentences of death must be vacated.

For the reasons cited in <u>Asay</u>, 41 Fla. L. Weekly at S646, we reject Lambrix's claim. Lambrix's conviction was final in 1986 and accordingly he is not entitled to relief based on <u>Hurst</u>.

**Whether the Postconviction Judge was Biased**

In his second habeas claim, Lambrix challenges whether this Court erred in denying a claim in prior proceedings that alleged his postconviction judge was biased. <u>See</u> <u>Lambrix</u>, 124 So. 3d 890. In particular, during a prior appeal from a successive motion for postconviction relief and a petition for writ of prohibition, Lambrix asserted that the postconviction judge was biased based on her rulings and because the judge failed to reveal that she had been previously employed as an Assistant State Attorney. In addition, Lambrix asserted that a staff attorney working for the Twentieth Judicial Circuit had assisted Lambrix. <u>Id</u>. at 897. During those prior proceedings, this Court remanded the proceeding for an evidentiary claim, but the claim was subsequently denied. <u>Id.</u> This Court fully considered Lambrix's position and rejected it in that proceeding. <u>Id.</u> at 898.

- 20 -

Lambrix cannot use a successive petition for writ of habeas corpus to raise claims that he raised in a prior proceeding. As this Court has long held, "[h]abeas corpus should not be used as a vehicle for presenting issues which should have been raised at trial and on appeal or in postconviction proceedings." Diaz v. State, 132 So. 3d 93, 122 (Fla. 2013) (quoting Wright v. State, 857 So. 2d 861, 874 (Fla. 2003)). As this ground clearly was already raised and rejected by this Court, this claim is procedurally barred.

## Clemency Proceedings

In his final habeas claim, Lambrix contends that his clemency proceedings have been inadequate, even though he acknowledges that he had three prior opportunities, or three prior "bites of the clemency apple." In support, he contends that his initial clemency proceeding occurred prior to his federal habeas proceedings and the clemency board did not even question him, while the last two proceedings did not involve any interviews or formal proceedings.

This Court has previously rejected similar claims. For example, in Pardo v. State, 108 So. 3d 558, 568-69 (Fla. 2012), we denied a challenge to the clemency proceeding based on a lack of opportunity to present witnesses and evidence and based on allegations that the clemency interview took place decades before Pardo's death warrant was signed. This Court reasoned as follows:

> First, Pardo had a clemency proceeding in 1990 at which he was represented by counsel, and we have previously rejected the

- 21 -

argument that a defendant is entitled to present a full accounting of mitigation evidence as part of the clemency process. See Grossman v. State, 29 So. 3d 1034, 1044 (Fla. 2010); Johnston v. State, 27 So. 3d 11, 25 (Fla. 2010); Glock v. Moore, 776 So. 2d 243, 252-53 (Fla. 2001). Second, we have likewise rejected the argument that a long time lapse between a defendant's clemency proceeding and the signing of his death warrant renders the clemency process inadequate or entitles the defendant to a second proceeding. See Gore[v. State], 91 So. 3d [769,] 778-79 [(Fla. 2012)]; Johnston, 27 So. 3d at 25-26; Bundy v. State, 497 So. 2d 1209, 1211 (Fla. 1986).

Id. at 568. To the extent that Lambrix is challenging the decision reached by the executive branch, we have consistently held, "clemency is an executive function and . . . , in accordance with the doctrine of separation of powers, we will not generally second-guess the executive's determination that clemency is not warranted." Id.; see also Johnston, 27 So. 3d at 26 ("[W]e decline to depart from the Court's precedent, based on the doctrine of separation of powers, in which we have held that it is not our prerogative to second-guess the executive on matters of clemency in capital cases."); Rutherford v. State, 940 So. 2d 1112, 1122-23 (Fla. 2006) (denying a similar clemency claim because the defendant had a clemency proceeding and because clemency is an executive function). Accordingly, this claim should be denied.

## CONCLUSION

In accordance with our analysis above, we affirm the postconviction court's denial of Lambrix's successive rule 3.851 motion for postconviction relief and

deny his petition for writ of habeas corpus. Additionally, we lift the stay entered

on February 2, 2016.

It is so ordered.

LABARGA, C.J., and POLSTON, J., concur.
PARIENTE, J., concurs in result with an opinion.
CANADY, J., concurs in result.
LEWIS, J., concurs in part and dissents in part.
QUINCE, J., recused.
LAWSON, J., did not participate.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND
IF FILED, DETERMINED.

PARIENTE, J., concurring in result.

Lambrix is the subject of a pending death warrant. Majority op. at 1. The

jury's recommendations for a sentence of death by votes of eight to four and ten to

two without any factual findings indicate that the Hurst error in Lambrix's case

was not harmless beyond a reasonable doubt. See Hurst v. State, 202 So. 3d 40, 65

(Fla. 2016); Lambrix v. State, 494 So. 2d 1143 (Fla. 1986). Therefore, I would

vacate Lambrix's sentences of death and remand for a new penalty phase under

Hurst based on my opinion in Asay v. State, 41 Fla. L. Weekly S646, 2016 WL

7406538 (Fla. Dec. 22, 2016), and elaborated on in Gaskin v. State, 42 Fla. L.

Weekly S16, 2017 WL 224772 (Fla. Jan. 31, 2017). Nevertheless, I recognize that

I am bound by this Court's precedent in Asay, which is now final; and, because

- 23 -

Lambrix's sentences became final in 1986, a majority of this Court would not apply Hurst retroactively to his case. Accordingly, I concur in result.

Two Cases:

An Appeal from the Circuit Court in and for Glades County,
        James Dean Sloan, Judge - Case No. 221983CF000012CFAXMX
And an Original Proceeding – Habeas Corpus

Neal Andre Dupree, Capital Collateral Regional Counsel, Southern Region, William McKinley Hennis, III, Litigation Director, Capital Collateral Regional Counsel, Southern Region, Martin J. McClain, Special Assistant, Capital Collateral Regional Counsel, Southern Region, and Jessica Leigh Houston, Michael Chance Meyer, and Bryan E. Martinez, Staff Attorneys, Capital Collateral Regional Counsel, Southern Region, Fort Lauderdale, Florida,

        for Appellant/Petitioner

Pamela Jo Bondi, Attorney General, Tallahassee, Florida; Scott Andrew Browne, Senior Assistant Attorney General, and C. Suzanne Bechard, Assistant Attorney General, Tampa, Florida,

        for Appellee/Respondent

Howard L. Dimmig, II, Public Defender, and Robert Arthur Young, Assistant Public Defender, Tenth Judicial Circuit, Bartow, Florida,

        for Amicus Curiae Florida Public Defender Association

Billy Horatio Nolas, Chief, Capital Habeas Unit, Office of the Federal Public Defender, Tallahassee, Florida,

        for Amicus Curiae Capital Habeas Unit of the Office of the Federal Public
        Defender for the Northern District of Florida

Nancy Gbana Abudu, Miami, Florida, and Norman Adam Tebrugge, Tampa, Florida,

for Amici Curiae American Civil Liberties Union Capital Punishment Project and the American Civil Liberties Union of Florida

Sonya Rudenstine, Gainesville, Florida, and Karen Marcia Gottlieb, Florida Center for Capital Representation, Florida International University College of Law, Miami, Florida,

for Amicus Curiae Florida Association of Criminal Defense Lawyers