[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-10251
_____

D.C. Docket No. 4:88-cv-12107-WJZ

CARY MICHAEL LAMBRIX,

                                                          Petitioner-Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,

                                                          Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

Before ED CARNES, Chief Judge, TJOFLAT, and HULL, Circuit Judges.

HULL, Circuit Judge:

On February 1, 2016, Petitioner Cary Lambrix filed a motion for a certificate of appealability ("COA") in this Court. Lambrix, a Florida prisoner sentenced to death, seeks to appeal the district court's order denying his "Motion for Relief from Judgment Pursuant to Rule 60(b)." Although Lambrix's initial 28 U.S.C. § 2254 petition was denied in 1992, Lambrix's Rule 60(b) motion sought to vacate that 1992 judgment.

Lambrix has since filed two amended motions for a COA in this Court, in which Lambrix reasserts or readopts the claims raised in his initial motion. In this order we address all of his claims cumulatively. After review of the record, we deny Lambrix's three motions for a COA and explain why.

## I.  CONVICTION AND INITIAL COLLATERAL PROCEEDINGS

Over the past 32 years, Lambrix has filed dozens of petitions, motions, original writs, and appeals in both state and federal courts. His current Rule 60(b) motion was merely the latest attempt to argue, once again, that some of his earlier claims, especially his ineffective-trial-counsel claims, were improperly procedurally defaulted or wrongly decided. Although our Court previously compiled an exhaustive narrative of Lambrix's lengthy journey through the court system, see Lambrix v. Sec'y, Fla. Dep't of Corr., 756 F.3d 1246, 1250 (11th Cir.

2

2014) (hereinafter, "Lambrix III"), we review here some of the protracted history of Lambrix's case to give his current Rule 60(b) motion the necessary context.

## A.     Two Capital Murders in 1983

In 1983, Lambrix brutally killed Clarence Moore and Aleisha Bryant outside of his home by choking and stomping Bryant and hitting Moore over the head with a tire iron.  See In re Lambrix, 624 F.3d 1355, 1358-59 (11th Cir. 2010) ("Lambrix II").  Lambrix then ate dinner with his girlfriend, Frances Smith, cleaned himself, borrowed a shovel, buried Moore's and Bryant's bodies in shallow graves, and used Moore's car to dispose of the tire iron and his own bloody shirt in a nearby stream.  See id.

In 1984, Lambrix was convicted of two counts of first-degree murder and sentenced to death for the 1983 murders of Moore and Bryant.  Lambrix III, 756 F.3d at 1250.  At trial, counsel Robert Jacobs and Kinley Engvalson of the Office of the Public Defender for the 20th Judicial Circuit of Florida represented Lambrix. Id.  With new appellate counsel, Lambrix appealed his 1984 convictions and two death sentences, raising multiple issues on appeal.  Id.  The Florida Supreme Court affirmed Lambrix's convictions and sentences.  See Lambrix v. State, 494 So. 2d 1143, 1145 (Fla. 1986).

3

**B.    Initial State Post-Conviction Proceedings in 1986-1988**

Lambrix, through new collateral counsel, filed his first motion for post-conviction relief under Florida Rule of Criminal Procedure 3.850.  Lambrix III, 756 F.3d at 1250.  Lambrix's first state post-conviction motion raised several claims, including claims of ineffective assistance of trial counsel.  Id.  The state trial court denied Lambrix's post-conviction motion on the merits of every claim.  Id.  Lambrix appealed this ruling, but the Florida Supreme Court affirmed.  See Lambrix v. State, 534 So. 2d 1151, 1154 (Fla. 1988).

Lambrix filed a counseled petition for a writ of habeas corpus in the Florida Supreme Court, and also filed a pro se habeas petition in the state trial court.  Lambrix III at 1251.  Ultimately, the Florida Supreme Court, in two separate opinions, denied Lambrix's state habeas petitions.  See Lambrix v. Dugger, 529 So. 2d 1110, 1112 (Fla. 1988) (denying original state habeas petition alleging ineffective assistance of appellate counsel); Lambrix v. State, 559 So. 2d 1137, 1138 (Fla. 1990) (affirming trial court's denial of state habeas petition alleging ineffective assistance of state collateral counsel for failing to raise claim of juror misconduct in motion for post-conviction relief).

**C.    Initial Federal § 2254 Petition in 1988-1997**

In 1988, Lambrix, through counsel, petitioned the federal district court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Lambrix III, 756 F.3d at

4

1251. Thereafter, the district court granted counsel's motion to withdraw and appointed new counsel for Lambrix: Robert Josefsberg and Joel Lumer, private attorneys who volunteered with the Volunteer Lawyers Resource Center ("VLRC"). Id. Lambrix amended his § 2254 petition to raise 28 grounds for relief, including many claims based on the alleged "ineffective assistance of counsel rendered by both trial and appellate counsel with respect to many stages of the representation of [Lambrix]." Id. Thereafter, the district court appointed additional counsel Matthew Lawry, director of the VLRC, to assist attorneys Josefsberg and Lumer with Lambrix's initial § 2254 petition. Id.

In 1991, the district court held a five-day evidentiary hearing, during which Lambrix's counsel appeared and acted on Lambrix's behalf. Id. In 1992, the district court, in a 72-page order, denied every ineffective trial and appellate counsel claim in Lambrix's § 2254 petition on the merits. Id. at 1251-52. The district court did not conclude that any of Lambrix's ineffective-trial-counsel or ineffective-appellate-counsel claims were procedurally defaulted. Id. at 1252.

The district court also found that four other claims raised in a later-filed amendment were "procedurally barred because they were never raised on direct appeal nor within the two-year limit provided for by the rules governing [Rule]

3.850 motions." Id. at 1252 n.9.  Notably, though, the district court alternatively denied these four claims on the merits.[1]  Id.

Lambrix appealed.  Id. at 1252.  Shortly thereafter, this Court granted counsel Lumer's motion to withdraw.  Id.  Counsel Lawry and Josefsberg remained as Lambrix's counsel.  Id.  On appeal, Lambrix asserted that (1) his trial counsel rendered ineffective assistance at the guilt and penalty phases and (2) his appellate counsel rendered ineffective assistance on direct appeal.  Id.

After briefing and oral argument, this Court reviewed the merits of the § 2254 claims raised on appeal, including Lambrix's ineffective-trial-and-appellate-counsel claims, and affirmed the district court's denial of Lambrix's initial § 2254 petition.  See Lambrix v. Singletary, 72 F.3d 1500 (11th Cir. 1996), aff'd, 520 U.S. 518, 117 S. Ct. 1517 (1997) (hereinafter, "Lambrix I").  In particular, this Court discussed at length, and ultimately denied on the merits, Lambrix's claim that his trial counsel rendered ineffective assistance at the penalty phase and that his appellate counsel did so too on direct appeal.  Id. at 1504-07.

This Court also decided on the merits Lambrix's claim that his trial counsel did not inform him that he had the right to testify at his second trial and that the

---

[1]These four claims were: "(1) setting aside a prior conviction, (2) an anti-sympathy instruction claim, (3) improper instruction with respect to the weighing of the aggravating and mitigating circumstances, and (4) the court-appointed psychiatrist rendered ineffective assistance."  Lambrix III, 756 F.3d at 1252 n.9.

ultimate decision belonged to him. In rejecting that claim on the merits, we

concluded:

> Lambrix's claim that he was unaware of his right to testify is dubious considering the evidence he has adduced concerning his attempt to assert that right in his first trial. Moreover, after receiving an evidentiary hearing on this issue before the district court, Lambrix adduced no evidence supporting his allegation that counsel failed to adequately inform him of the right to testify. Therefore, Lambrix has simply failed to show that some action or inaction by counsel deprived him of "the ability to choose whether or not to testify in his own behalf."

Id. at 1508 (quoting United States v. Teague, 953 F.2d 1525, 1534 (11th Cir.

1992)). Contrary to Lambrix's contentions, his § 2254 claims were decided on the

merits.

## II. LAMBRIX'S SEVEN SUCCESSIVE STATE POST-CONVICTION PETITIONS

While simultaneously pursuing habeas relief through his initial § 2254

proceedings in federal court, Lambrix, with the assistance of counsel Lawry and

Josefsberg, filed a second and successive state motion for post-conviction relief

pursuant to Florida Rules of Criminal Procedure 3.850 and 3.851, which was

denied. Lambrix III, 756 F.3d at 1253. The Florida Supreme Court affirmed the

state trial court's denial because Lambrix's claims were untimely or impermissibly

successive under state law and, thus, were procedurally barred under state law.

See Lambrix v. State, 698 So. 2d 247, 248 (Fla. 1996). The Florida Supreme Court

denied Lambrix's request for rehearing. See Lambrix III, 756 F.3d at 1254.

7

Lambrix, with the assistance of counsel Josefsberg and additional VLRC counsel Steven Goldstein, also filed a successive state habeas petition. See Lambrix v. Dugger, No. 92-4539 (11th Cir. Mar. 3, 1993) (unpublished). The Florida Supreme Court denied that counseled successive state habeas petition. See Lambrix v. Singletary, 641 So. 2d 847, 849 (Fla. 1994) (denying Lambrix's state habeas petition alleging Espinosa error and ineffective assistance of appellate counsel), reh'g denied (Sept. 8, 1994).

In May 2000, the Florida state courts appointed the Capital Collateral Regional Counsel ("CCRC") to serve as Lambrix's state collateral counsel. Lambrix III, 756 F.3d at 1254-55. CCRC-South litigation director Todd Scher served as Lambrix's state collateral counsel from June 2000 to May 2002. Id. at 1255. CCRC-South counsel Dan Hallenberg served as Lambrix's state collateral counsel from May 2002 to October 2004. Id. From October 2004 until the present, CCRC-South litigation director William Hennis has served as Lambrix's state collateral counsel. Id.

With the assistance of state collateral counsel, Lambrix filed several additional successive state motions for post-conviction relief. See Lambrix v. State, 39 So. 3d 260, 262-66 (Fla. 2010) (third state post-conviction proceeding, outlining extensive history of the case); Lambrix v. State, 124 So. 3d 890 (Fla.

8

2013), reh'g denied (Oct. 17, 2013) (fourth and fifth state post-conviction proceedings).

CCRC-South counsel Hennis, Neal Dupree, and Craig Trocino assisted Lambrix in his successive state post-conviction proceedings. Lambrix III, 756 F.3d at 1255. After several evidentiary hearings, the state post-conviction court denied relief on all of Lambrix's claims, and the Florida Supreme Court affirmed. See Lambrix v. State, 39 So. 3d 260, 262 (Fla. 2010), cert. denied, Lambrix v. Florida, 562 U.S. 1145, 131 S. Ct. 917 (2011) (mem.); Lambrix v. State, 124 So. 3d 890, 893 (Fla. 2013) (concluding that Lambrix's fourth and fifth state post-conviction motions were "completely devoid of merit" and denying Lambrix's petition for a writ of prohibition), reh'g denied (Oct. 17, 2013), cert. denied, Lambrix v. Florida, ___ U.S. ___, 134 S. Ct. 1789 (2014) (mem.).

In March 2013, Lambrix, with the assistance of counsel Hennis, filed a sixth state post-conviction motion, which alleged that Lambrix "was entitled to raise procedurally barred claims of ineffective assistance of counsel based on Martinez." See Lambrix v. State, No. SC13-1471, 2014 WL 1271527, at *1 (Fla. Mar. 27, 2014) (citing Martinez v. Ryan, 566 U.S. 1, 132 S. Ct. 1309 (2012)). The state post-conviction court denied relief, and the Florida Supreme Court affirmed. See id. (denying Lambrix's allegedly Martinez-based motion as meritless and untimely).

Because an understanding of the Supreme Court's ruling in Martinez (and in a later companion decision, Trevino v. Thaler, 569 U.S. ___, 133 S. Ct. 1911 (2013)), is important to our ultimate conclusion, we briefly explain those decisions. In Martinez, the U.S. Supreme Court enunciated a narrow exception to the general rule that the lack of an attorney or attorney error in state post-conviction proceedings does not establish cause to excuse the procedural default of a substantive claim.   566 U.S. at 8, 13-14, 132 S. Ct. at 1315, 1318.  The Supreme Court, however, set strict parameters on the application of this exception.  It applies only where (1) state law requires a prisoner to raise ineffective-trial-counsel claims during an initial collateral proceeding and precludes those claims during direct appeal; (2) the prisoner failed to properly raise ineffective-trial-counsel claims during the initial collateral proceeding; (3) the prisoner either did not have counsel or his counsel was ineffective during those initial state collateral proceedings; and (4) failing to excuse the prisoner's procedural default would result in the loss of a "substantial" ineffective-trial-counsel claim.  Id. at 14, 132 S. Ct. at 1318; see also Arthur v. Thomas, 739 F.3d 611, 629 (11th Cir. 2014) (setting forth the Martinez requirements).  The Supreme Court later extended Martinez's rule to cases where state procedures, as a practical matter, make it "virtually impossible" to actually raise ineffective-trial-counsel claims on direct appeal. Trevino, 569 U.S. at __, 133 S. Ct. at 1918-21.

On November 30, 2015, the Governor signed a death warrant.  On December 15, 2015, Lambrix filed his seventh successive motion for post-conviction relief in Florida state court and a motion for post-conviction DNA testing.  On December 21, 2015, the trial court denied both his successive motion and the motion for DNA testing.  Lambrix appealed to the Florida Supreme Court.

On January 11, 2016, Lambrix also filed a petition for habeas corpus in the Florida Supreme Court, raising a new claim based on Hurst v. Florida, 577 U.S. ___, 136 S. Ct. 616 (2016).  Lambrix also moved for the Florida Supreme Court to relinquish jurisdiction over his case so that his Hurst claim could be litigated before the state trial court.  On February 2, 2016, the Florida Supreme Court denied without prejudice Lambrix's motion to relinquish jurisdiction (to the state trial court).  The Florida Supreme Court also stayed Lambrix's execution pending resolution of his Hurst claim.  On February 2, 2017, Lambrix filed a second motion to relinquish jurisdiction, which the Florida Supreme Court denied on February 7, 2017.

On March 9, 2017, the Florida Supreme Court denied Lambrix's January 11, 2016 petition for habeas corpus and affirmed the state trial court's denial of his December 15, 2015 motions.  The Florida Supreme Court held that Hurst was not retroactively applicable to Lambrix's case, following its decision in Asay v. State, ___ So. 3d ___, Nos. SC16-223, SC16-102, and SC16-628, 2016 WL 7406538, at

11

*4, *13 (Fla. Dec. 22, 2016) (per curiam) (holding under Florida law that Hurst is not retroactive to capital convictions where the death sentence became final before the 2002 issuance of Ring v. Arizona, 536 U.S. 584, 122 S. Ct. 2428 (2002)).[2]

### III.  NINE OTHER MISCELLANEOUS STATE PETITIONS

Lambrix also filed numerous pro se and counseled extraordinary writ petitions that the Florida courts either denied or dismissed.  See, e.g., Lambrix v. Friday, 525 So. 2d 879 (Fla. 1988) (tab. op.) (petition for extraordinary relief); Lambrix v. Martinez, 534 So. 2d 400 (Fla. 1988) (tab. op.) (petition for writ of mandamus); Lambrix v. Reese, 705 So. 2d 902 (Fla. 1998) (tab. op.) (petition for writ of mandamus); Lambrix v. State, 727 So. 2d 907 (Fla. 1998) (tab. op.) (petition for writ of prohibition); Lambrix v. State, 766 So. 2d 221 (Fla. 2000) (tab. op.) (petition for writ of mandamus); Lambrix v. State, 900 So. 2d 553 (Fla. 2005) (tab. op.) (petition for writ of mandamus); Lambrix v. State, 944 So. 2d 345 (Fla. 2006) (tab. op.) (petition for writ of mandamus); Lambrix v. State, 74 So. 3d 1083 (Fla. 2011) (tab. op.), reh'g denied (Oct. 14, 2011) (petition for writ of mandamus and/or prohibition).

---

[2]Lambrix's two capital convictions and death sentences became final in 1986, sixteen years before Ring was decided.  In the instant Rule 60(b) case, there is no Hurst claim, much less a viable one, because under federal law Hurst, like Ring, is not retroactively applicable on collateral review.  Cf. Schriro v. Summerlin, 542 U.S. 348, 358, 124 S. Ct. 2519, 2526 (2004) (holding that Ring does not apply retroactively under federal law to death-penalty cases already final on direct review).

Lambrix also filed a pro se petition for a writ of habeas corpus in the U.S. Supreme Court, pursuant to that Court's original habeas jurisdiction.  The U.S. Supreme Court summarily denied the petition.  In re Lambrix, 563 U.S. 1007, 131 S. Ct. 2907 (2011) (mem.).

With this background, we now turn to the three successive § 2254 federal habeas petitions filed by Lambrix.

## IV.  SUCCESSIVE § 2254 FEDERAL PETITIONS

### A.    First Attempt to File a Successive Federal § 2254 Petition

In 2010, Lambrix filed, in this Court, a 145-page pro se application for leave to file a second or successive § 2254 petition based on twelve claims.  This Court denied Lambrix's pro se application for leave to file a second or successive § 2254 petition because none of Lambrix's claims satisfied the requirements of a second or successive § 2254 federal habeas petition.  Lambrix II, 624 F.3d at 1357-59, 1368.

### B.    Second Attempt to File a Successive Federal § 2254 Petition

In March 2013, Lambrix filed a pro se "Motion for Appointment of Substitute Collateral Counsel" in federal district court for the purpose of pursuing another successive § 2254 petition based on Martinez.  The district court construed the motion as an unauthorized successive § 2254 petition and denied it without

prejudice so that Lambrix could seek an order from this Court authorizing the district court to consider the successive § 2254 petition.

This Court affirmed the district court's denial on the grounds that "appointing counsel to investigate and raise ineffective-trial-counsel claims in a successive § 2254 petition would be futile and would not serve the interests of justice." Lambrix III, 756 F.3d at 1263. We held that Martinez did not apply to Lambrix because (1) his state collateral counsel actually raised ineffective-trial-counsel claims in his initial state post-conviction proceedings; (2) his federal counsel also raised ineffective-trial-counsel claims in his initial § 2254 petition; and (3) the state and federal courts reviewed these claims on the merits. Id. at 1249. We further held that Lambrix's proposed ineffective-assistance claims were futile because they were impermissibly successive under 28 U.S.C. § 2244(b). Id. We additionally held that to the extent Lambrix attempted to raise new ineffective-trial-counsel claims, those claims were time-barred under 28 U.S.C. § 2244(d), and Martinez did not toll the statute of limitations for filing § 2254 petitions. Id. We concluded that Martinez did not (contrary to Lambrix's suggestion) create a "freestanding claim for challenging a conviction or sentence based on the alleged ineffective assistance of state post-conviction counsel." Id. at 1262.

On January 16, 2015, Lambrix filed a petition for certiorari in the U.S. Supreme Court challenging the denial of his motion for appointment of substitute

14

counsel, which was denied.  Lambrix v. Jones, ___ U.S. ___, 135 S. Ct. 1894 (2015) (mem.).

## C.      Third Attempt to File a Successive Federal § 2254 Petition

In December 2014, Lambrix, through counsel Hennis, filed a 101-page application to file a successive habeas petition pursuant to 28 U.S.C. § 2244(b) in this Court.  On January 14, 2015, this Court denied that application.  In re Lambrix, 776 F.3d 789, 791 (11th Cir. 2015) ("Lambrix IV").  Lambrix filed a motion to recall the mandate, which this Court denied.  Lambrix then filed a motion for en banc rehearing of the denial of the motion to recall the mandate, which we construed as a motion for reconsideration and denied on May 15, 2015.  Lambrix sought certiorari review of that decision and, on November 30, 2015, following briefing from both parties, that petition was denied.  Lambrix v. Jones, ___U.S___, 136 S. Ct. 537 (2015) (mem.).

On August 12, 2015, Lambrix, through counsel, filed another original habeas petition in the U.S. Supreme Court.  On November 30, 2015, following a response, that petition was denied.  In re Lambrix, ___U.S.___, 136 S. Ct. 541 (2015) (mem.).

This brings us to Lambrix's instant Rule 60(b) motion, which the district court denied.  Lambrix now moves for a COA as to that denial.

## V.  INSTANT RULE 60(b) MOTION

On October 22, 2015, Lambrix filed a 63-page motion under Rule 60(b)(5) and 60(b)(6) of the Federal Rules of Civil Procedure, seeking to vacate the May 12, 1992 judgment denying his initial § 2254 petition for habeas relief.  Lambrix's 2015 motion asserted, inter alia, that the 1992 denial of habeas relief was premised, in part, on a failure to recognize his equitable right to effective collateral counsel representation and an improper denial of some of his ineffective-trial-counsel claims as procedurally barred.

While Lambrix's Rule 60(b) motion pointed to a change in the relevant law in Martinez and Trevino (collectively "Martinez"), Lambrix also alleged that he was arguing "something more" than the mere change represented in that decisional law.  Lambrix's motion contended that his case presented "extraordinary circumstances" under Rule 60(b) because (1) a review of the constitutional claims that were previously found procedurally defaulted would demonstrate his actual innocence, and (2) his ability to present those claims in his original federal habeas petition was "obstructed by fundamentally unfair actions attributable to the State." In his prayer for relief, Lambrix's Rule 60(b) motion asked that the final 1992 judgment denying § 2254 habeas relief be vacated and set aside so as to permit a "full and fair review of [his] substantive underlying constitutional claims

16

previously subject to procedural bar," where "all material factual disputes [would] be resolved by way of a full and fair evidentiary process."[3]

With his Rule 60(b) motion in the district court, Lambrix also filed a 120-page document entitled "Proffer of Substantive Constitutional Claims Subject to Evaluation Under Martinez v. Ryan" raising four claims  First, Lambrix asserted that his post-conviction collateral counsel was ineffective for failing to argue that trial counsel was ineffective for failing to investigate, develop, and present evidence necessary to subject the State's theory of murder to a true adversarial testing.

Second, Lambrix's proffer asserted that, had his state post-conviction counsel presented evidence that Lambrix was the subject of continued coercion not to testify at his second trial due to the ineffectiveness of trial counsel, he would have been granted habeas relief.  Lambrix acknowledged that the district court had previously denied this ineffective-trial-counsel claim on the merits.  See Lambrix I, 72 F.3d at 1508 (rejecting, on the merits, Lambrix's argument that he was denied the fundamental right to testify because his lawyer and the judge "coerced" him into choosing between his right to testify and his right to counsel during his first

---

[3]The government argues that the instant Rule 60(b) motion is merely a rehash of arguments this Court considered and rejected in our 2014 Lambrix III opinion and, thus, that we should deny a COA based on the law-of-the-case doctrine.  For purposes of this appeal, and because the result is the same either way, we will assume, arguendo, that Lambrix's Rule 60(b) motion should not be construed as merely a successive § 2254 petition and treat it as a Rule 60(b) motion.

trial).  The denial was not based on any state procedural bar.  Id.  However,

Lambrix argued that his actual innocence was an extraordinary circumstance which

should have allowed him to provide additional evidence in support of this claim.

Third, Lambrix contended that his post-conviction counsel failed "to identify

and raise the most important elements pertaining to jury selection" where trial

counsel was ineffective.  Here too, Lambrix acknowledged that post-conviction

counsel did assert claims of ineffective trial counsel during jury selection in his

1988 federal habeas petition, and those claims were denied on the merits.

However, Lambrix proposed that post-conviction counsel failed to argue

ineffectiveness of trial counsel as to two specific jurors who should have been

dismissed for cause.

Fourth, Lambrix argued that his post-conviction counsel was ineffective for

failing to assert that trial counsel was ineffective during the penalty phase for

failing to pursue evidence and adopt a strategy that would have provided the jury

with available mitigation evidence regarding Lambrix's childhood abuse and

neglect, substance abuse, and injury during his military service.  Once again,

Lambrix admits that the district court, during the initial § 2254 federal habeas

review in 1992, denied his claim of ineffective assistance during the penalty phase.

Nevertheless, Lambrix's proffer argued that if the district court had been made

aware of other mitigation evidence available to trial counsel, the court would not

18

have found trial counsel's strategic decisions to have been reasonable.  In other words, Lambrix asked the district court to consider new or different evidence in support of a claim which was reviewed and denied on the merits.[4]

## VI.  DISTRICT COURT'S DENIAL OF RULE 60(b) MOTION

On December 23, 2015 the district court denied Lambrix's Rule 60(b) motion on multiple grounds.  First, the district court found that Lambrix's October 22, 2015 motion was untimely under Rule 60(b) as it was not filed within a reasonable time after Martinez or after this Court's denial of Lambrix's earlier federal motions and petitions.  See Lambrix III, 756 F.3d at 1257 (summarizing history of Lambrix's case and denying his 2013 motion as an attempt to file a successive § 2254 petition).

Second, the district court noted that Martinez did not even apply to the claims discussed in Lambrix's Rule 60(b) motion.  Post-conviction counsel had argued that trial counsel was ineffective in several respects and had lost on the merits.  The district court concluded that Lambrix had not shown that his "proffered claims" were ever found to be procedurally barred by a federal habeas court due to a state procedural rule.  Rather, the proffered claims either (1) were

---

[4]Lambrix's Rule 60(b) motion and the attached proffer also made some intermittent allegations about obstruction by the State, Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963) and Giglio v. United States, 405 U.S. 150, 92 S. Ct. 763 (1972), but they were conclusory, were not enunciated in any numbered claim, and were not the main focus of his Rule 60(b) motion.

not raised in the initial § 2254 petition or (2) were raised in some form and decided on the merits.

Third, even if the Rule 60(b) motion was timely filed and even if Martinez was applicable to some claims, the change in the law effected by Martinez did not constitute an extraordinary circumstance sufficient to invoke Rule 60(b)(6).  In so ruling, the district court cited this Court's precedent in Arthur, 739 F.3d at 631 (holding that the change in decisional law rendered in Martinez is not an "extraordinary circumstance" sufficient to invoke Rule 60(b)(6)).

As to Rule 60(b)(5), the district court concluded that this Rule applies to only "ordinary civil litigation where there is a judgment granting continuing prospective relief, such as an injunction, but not to the denial of federal habeas relief," quoting our binding precedent in Griffin v. Sec'y, Dep't of Corr., 787 F.3d 1086, 1090 (11th Cir. 2015) (rejecting argument that Rule 60(b)(5) permits petitioners to use Martinez and Trevino to raise ineffective-assistance claims that were denied in a previous federal habeas proceeding as procedurally defaulted).

On January 21, 2016, Lambrix contemporaneously filed in the district court a notice of appeal from the district court's Rule 60(b) order and a motion for a COA.  On January 28, 2016, the district court denied Lambrix's motion for a COA.

On February 1, 2016, Lambrix filed in this Court a motion for a COA as to the district court's denial of his Rule 60(b) motion.  On April 11, 2016, Lambrix

20

filed an amended motion for a COA, to which the government responded on April 19, 2016. The first amended motion largely repeated the arguments raised in his initial motion.

On August 15, 2016, Lambrix filed a second amended motion, to which the government did not respond. Lambrix again largely reiterated the same arguments that he raised in his initial and first amended motions, but he added a discussion of the Supreme Court's grant of certiorari in Buck v. Stephens.[5] As noted at the outset, this order addresses all claims in the three motions cumulatively.

## VII.  COA REQUIREMENTS

A COA is "required for the appeal of any denial of a Rule 60(b) motion for relief from a judgment in a § 2254 or § 2255 proceeding." Gonzalez v. Sec'y, Dep't of Corr., 366 F.3d 1253, 1263 (11th Cir. 2004) (en banc). Section 2253 provides that a COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" Buck v. Davis, 580 U.S. ___, ___ S. Ct. ___, No. 15-8049, 2017 WL 685534, at *11 (Feb. 22, 2017) (quoting Miller-El v.

---

[5]As will be explained further below, the Supreme Court issued its decision in the Buck case after Lambrix filed his second amended motion for a COA.

21

Cockrell, 537 U.S. 322, 327, 123 S. Ct. 1029, 1034 (2003)). The Supreme Court has made clear that the issuance of a COA "must not be pro forma or a matter of course." Miller-El, 537 U.S. at 337, 123 S. Ct. at 1040.

"When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604 (2000) (emphasis added). Thus, when a COA request concerns a procedural ruling, the required showing must include both the procedural issue and the constitutional issue. Id.

Here, the district court's holding that Lambrix failed to demonstrate that he was entitled to have his judgment reopened under Rule 60(b)(6) is a procedural ruling. See Buck, 2017 WL 685534, at *16. The Supreme Court has recently admonished that "a litigant seeking a COA must demonstrate that a procedural ruling barring relief is itself debatable among jurists of reason; otherwise, the appeal would not 'deserve encouragement to proceed further.'" Id. (citing Slack, 529 U.S. at 484, 120 S. Ct. at 1604).

In addition to these COA requirements, the COA question here is impacted by the discretionary nature of a Rule 60(b) motion and our standard of review of the district court's denial of a Rule 60(b)(6) motion, which we discuss below.

## VIII. RULE 60(b)(6)

Lambrix brought his Rule 60(b) motion under the Rule's catchall category, subsection (b)(6), which permits a court to reopen a judgment for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6).[6] "Rule 60(b) vests wide discretion in courts, but [the Supreme Court has] held that relief under Rule 60(b)(6) is available only in 'extraordinary circumstances.'" Buck, 2017 WL 685534, at *16 (quoting Gonzalez v. Crosby, 545 U.S. 524, 535, 125 S. Ct. 2641, 2649 (2005)); see also Booker v. Singletary, 90 F.3d 440, 442 (11th Cir. 1996) (explaining that relief from "judgment under Rule 60(b)(6) is an extraordinary remedy"). "Such circumstances will rarely occur in the habeas context." Gonzalez, 545 U.S. at 535, 125 S. Ct. at 2649.

Whether to grant relief under Rule 60(b) is "a matter for the district court's sound discretion." Toole v. Baxter Healthcare Corp., 235 F.3d 1307, 1317 (11th Cir. 2000) (quoting Booker, 90 F.3d at 442). We review a district court's denial of a Rule 60(b) motion only for an abuse of discretion. Howell v. Sec'y, Fla. Dep't of

---

[6]Lambrix's motions for a COA only slightly mention Rule 60(b)(5) and do not present any arguments in support of that claim. Accordingly, we consider Lambrix to have waived any appeal of the district court's decision as to Rule 60(b)(5). See Thomas v. Crosby, 371 F.3d 782, 793 (11th Cir. 2004) ("[A] litigant in a habeas case can waive his right to have a matter considered by this court by failing to raise it before us.").

Corr., 730 F.3d 1257, 1260 (11th Cir. 2013); see also Buck, 2017 WL 685534, at

*16 (citing 11 Wright & Miller, Fed. Pr. and Proc. § 2857 (3d ed. 2012)).[7] "Rule

60(b) proceedings are subject to only limited and deferential appellate review."

Gonzalez, 545 U.S. at 535, 125 S. Ct. at 2649.

Accordingly, where a petitioner seeks a COA following the denial of his

Rule 60(b)(6) motion in district court, "the COA question is . . . whether a

reasonable jurist could conclude that the District Court abused its discretion in

declining to reopen the judgment." Buck, 2017 WL 685534, at *16.[8]

## IX.  LAMBRIX IS NOT ENTITLED TO A COA

Here, Lambrix has failed to show that reasonable jurists could debate

whether the district court abused its discretion in declining to reopen the 1992

judgment.

First, Lambrix has not shown that reasonable jurists could debate whether

the district court abused its discretion in ruling that Martinez does not even apply

to Lambrix's claims.  All of Lambrix's proffered claims were already denied on

---

[7]Under the abuse-of-discretion standard, "we will leave undisturbed a district court's ruling unless we find that the district court has made a clear error of judgment, or has applied the wrong legal standard." Ameritas Variable Life Ins. v. Roach, 411 F.3d 1328, 1330 (11th Cir. 2005).

[8]As to the additional COA requirement of a debatable constitutional claim, Lambrix has raised Sixth Amendment ineffective-trial-counsel claims, and thus his Rule 60(b) motion has identified his underlying claims as constitutional claims.  See Spencer v. United States, 773 F.3d 1132, 1137-38 (11th Cir. 2014) (explaining that any COA issued by this Court or a district court must identify "an underlying error of constitutional magnitude").

the merits or have never been found to be procedurally barred based on any state procedural rule. The reasoning from our 2014 decision addressing Martinez and denying one of Lambrix's earlier motions (where he raised the exact same ineffective-assistance claims that he raises here) bears repeating:

> [T]he Martinez rule relates to excusing a procedural default of ineffective-trial-counsel claims in an initial § 2254 petition and does not apply to cases like Lambrix's—where ineffective-trial-counsel claims were reviewed on the merits in the initial § 2254 proceeding. Claims reviewable on the merits are, quite simply, not procedurally defaulted—nor otherwise procedurally barred.
>
> Lambrix's ineffective-trial-counsel claims in his initial § 2254 petition were not dismissed for any reason—procedural default, untimeliness, or any other reason. To the contrary, in reviewing Lambrix's initial, counseled § 2254 petition, the district court concluded—over the State's objections—that Lambrix's ineffective-trial-counsel claims were not procedurally defaulted. The district court then reviewed the merits of all of Lambrix's ineffective-trial-counsel claims, and this Court reviewed the merits of those claims on appeal. Thus, the narrow, equitable, non-constitutional exception . . . announced in Martinez is wholly inapplicable to Lambrix's case.

Lambrix III, 756 F.3d at 1260-61.

In his second amended COA motion, Lambrix makes the argument that the district court in its 1992 order concluded that "numerous claims" were procedurally barred, but this argument is misleading. The district court did conclude in 1992 that certain claims—that were raised in an amendment to the original § 2254 petition and are completely unrelated to the four claims Lambrix

25

now seeks to raise—would be procedurally barred.  But the district court concluded that these same claims failed on the merits in any event.

Second, this Court has already squarely held that "the change in the decisional law [e]ffected by the Martinez rule is not an 'extraordinary circumstance' sufficient to invoke Rule 60(b)(6)."  Arthur, 739 F.3d at 631.  Therefore, Martinez alone cannot form the basis for relief under Rule 60(b)(6).  "Arthur is controlling on us and ends any debate among reasonable jurists about the correctness of the district court's decision under binding precedent."  Hamilton v. Sec'y, Fla. Dep't of Corr., 793 F.3d 1261, 1266 (11th Cir. 2015).  Lambrix points to an alleged circuit split, but we need not evaluate that circuit split because Lambrix's Martinez argument is foreclosed by our binding decision in Arthur, and his attempted appeal does not present a debatable question because reasonable jurists would follow controlling law.  Gordon v. Sec'y, Dep't of Corr., 479 F.3d 1299, 1300 (11th Cir. 2007); see also Hamilton,793 F.3d at 1266 (rejecting similar circuit-split argument and writing that "we are bound by our Circuit precedent, not by Third Circuit precedent.").[9]

Third, we recognize that Lambrix claims that he has presented "something more" than a lone Martinez claim, and he asserts that the surrounding factual

---

[9]As the State also aptly points out, Lambrix did not raise the issue of a circuit split in the district court and has waived that argument on appeal.  But even considering a circuit split, we are bound by Arthur.

26

circumstances make his case "extraordinary." Lambrix relies on what was then the Supreme Court's grant of certiorari in Buck v. Stephens, but that case is now decided and is not helpful to Lambrix. We review Buck to show why.

In Buck, a capital case, the defendant's lawyer presented an expert witness during the penalty phase of trial whose report stated that, because the defendant (Buck) was black, there was an "increased probability" that he was likely to pose a danger in the future. 2017 WL 685534, at *5. Although the expert concluded that Buck himself was unlikely to pose a danger, the expert's report was admitted and the expert testified about the race factor. Id. at *5-6. Buck's first collateral petition in state court did not claim his trial counsel was ineffective for introducing this expert testimony, but his § 2254 federal petition did. Id. at *7-8.

The federal district court in Buck rejected this particular ineffective-trial-counsel claim as procedurally defaulted. Id. at *8. After Martinez and Trevino, Buck filed a Rule 60(b)(6) motion seeking to reopen his § 2254 case. Id. at *10. After the district court denied relief, the Fifth Circuit denied Buck a COA. Id. at *10-11. Reversing, the Supreme Court determined that the district court had abused its discretion in denying Buck's Rule 60(b)(6) motion. Id. at *15, *19.

Buck does not help Lambrix for two reasons. First, the procedural history in Buck contains an essential difference from Lambrix's case: in adjudicating Buck's first federal habeas corpus petition, the district court ruled that his claim—that his

27

trial counsel was ineffective for presenting race-based evidence of future dangerousness—was procedurally defaulted because he failed to present it in his initial state collateral proceedings. Id. at *7-8. With this explicit procedural-default finding, "[h]ad Martinez and Trevino been decided before Buck filed his § 2254 petition, a federal court could have reviewed Buck's ineffective assistance claim if he demonstrated [the Martinez factors.]" Id. at *9.

Second, the extraordinary circumstances in Buck are not present in Lambrix's case. The Supreme Court in Buck found the requisite "extraordinary circumstances" for three reasons: (1) it was a death-penalty case; (2) the underlying claim involved a race-based claim of ineffective-assistance-of-trial-counsel, a "pernicious" injury that harms not only the petitioner but the community at large; and (3) the State of Texas's "remarkable step[]" of admitting error in similar cases but refusing to admit error in Buck's case.[10] Id. at *16-18; see also id. at *25 (Thomas, J., dissenting) (explaining that the majority's opinion "relies on the convergence of three critical factors that will rarely, if ever, recur.").

Although this is also a death-penalty case, Lambrix has not shown similarly extraordinary circumstances here. As to his first alleged extraordinary

---

[10]While Buck's first habeas petition was pending, the State of Texas confessed error in another case in which that same expert testified that race was a factor weighing toward future dangerousness. Buck, 2017 WL 685534, at *7. Further, the Texas Attorney General then issued a statement that it had identified other cases in which this same expert gave similar inappropriate testimony. Id. By the end of 2002, Texas had consented to resentencing in all of the cases it had identified, save Buck's. Id.

28

circumstance (the merits of his ineffective-assistance claims), Lambrix's underlying ineffective-trial-counsel claims do not present allegations that his trial counsel presented race-based evidence of future dangerousness, the underlying issue that the Supreme Court found so "odious" and poisonous in Buck. See 2017 WL 685534, at *16. Lambrix also fails to demonstrate how his claims (all of which were denied on the merits or were not rejected based on a procedural bar) give rise to the sort of pernicious injury that affects communities at large, instead of garden-variety ineffective-trial-counsel claims.

As to his second alleged extraordinary circumstance (his allegations that the State obstructed his case and violated his constitutional rights under Brady, 373 U.S. at 83, 83 S. Ct. at 1194, and Giglio, 405 U.S. at 150, 92 S. Ct. at 763), those allegations have already been considered and rejected by this Court on the merits on two occasions. See Lambrix II, 624 F.3d at 1366-67 (denying Lambrix's first application for leave to file a successive habeas petition in 2010 and specifically rejecting his Brady and Giglio claims); see also Lambrix IV, 776 F.3d at 794-97 (denying Lambrix's third application for leave to file a successive habeas petition that raised many of the same claims rejected by this Court in its 2010 opinion).

Thus, we conclude that Lambrix has failed to show that reasonable jurists could debate whether the district court abused its discretion in denying Lambrix's Rule 60(b)(6) motion and declining to reopen his 1992 judgment.

29

## X.  CONCLUSION

We close by noting the district court's observation, written 25 years ago, that "[t]here must come a time, even when so irreversible a penalty as that of death has been imposed upon a particular defendant, that the legal issues in the case have been sufficiently litigated and re-litigated so that the law must be allowed to run its course."  For Mr. Lambrix, who has litigated and re-litigated variations on the same claims for decades, that time has come and gone.  See Lambrix v. State, __ So. 3d __, Nos. SC16-8 & SC16-56, slip op. at 19 (Fla. Mar. 9, 2017) (per curiam) (rejecting Lambrix's three most recent motions and pointing out that "Lambrix has contributed to the lengthy time and delay by continually challenging his convictions and sentences").  For the foregoing reasons, reasonable jurists could not debate whether the district court abused its discretion in denying Lambrix's Rule 60(b)(6) motion.  See Buck, 2017 WL 685534, at *16.  Accordingly, Lambrix's request for a COA is **DENIED.**[11]

---

[11]In his first and second amended motions for a COA, Lambrix also requests that this Court set a briefing schedule for his appeal of the district court's denial of his motion for court-appointed federal habeas counsel under 18 U.S.C. § 3599 to prosecute the reopening of his case under Rule 60(b), his clemency claims, and another (his fourth) successive § 2254 petition.  Lambrix states that it is unnecessary for him to file a COA to appeal the Rule 60(b) order to the extent it denied his requests for new counsel as moot, citing Harbison v. Bell, 556 U.S. 180, 183, 129 S. Ct. 1481, 1485 (2009) (stating that denials of § 3599 motions are "clearly" appealable orders under 28 U.S.C. § 1291).

The government responds that, at no expense to him, Lambrix already has competent counsel in his Rule 60(b) case, had qualified clemency counsel but clemency has been denied, and has had counsel pursue multiple successive habeas petitions.  Because Lambrix has identified no potentially viable claims in his Rule 60(b) case or his many other recent cases, the district court in his Rule 60(b) case did not err in denying Lambrix's request for counsel as moot,

30

---

or effectively as futile.  We note that Lambrix made this same § 3599 request in another recent proceeding (before he filed his Rule 60(b) motion in 2015).  The district court denied his § 3599 request, and on direct appeal this Court affirmed on the grounds, <u>inter alia</u>, that Lambrix's request for new § 3599 counsel was futile.  <u>Lambrix v. Sec'y, Fla. Dep't of Corr.</u>, 756 F.3d 1246, 1263 (11th Cir. 2014).