[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14457

_____

D.C. Docket No. 7:14-cv-00039-MTT

RAY JEFFERSON CROMARTIE,

                                                                    Petitioner-Appellant,

                                            versus

GDCP WARDEN

                                                                    Respondent-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(November 13, 2019)

Before ED CARNES, Chief Judge, MARTIN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Ray Jefferson Cromartie is a Georgia death row inmate scheduled to be

executed on November 13, 2019, at 7:00 p.m.  On November 8, 2019, he filed a

Rule 60(b) motion in the United States District Court for the Middle District of

Georgia contending that extraordinary circumstances warrant the reopening of the district court's final judgment denying his 28 U.S.C. § 2254 petition. He also filed a motion for a stay of his execution. The district court issued an order denying both motions. On November 13, 2019, the day of his scheduled execution, Cromartie filed in this Court an application for a certificate of appealability and an emergency motion for a stay of execution. We deny both.

## I.

We review the denial of Rule 60(b) motions only for abuse of discretion. Lambrix v. Sec'y, Fla. Dep't of Corr., 851 F.3d 1158, 1170 (11th Cir. 2017). The rule vests wide discretion in district courts. Buck v. Davis, 137 S. Ct. 759, 777 (2017). Rule 60(b)(6), the catchall provision, is available only in "extraordinary circumstances . . . [which] rarely occur in the habeas context." Gonzalez v. Crosby, 545 U.S. 524, 535 (2005). Where, as here, a petitioner seeks a COA following the denial of his Rule 60(b)(6) motion in district court, "the COA question is . . . whether a reasonable jurist could conclude that the District Court abused its discretion in declining to reopen the judgment." Lambrix, 851 F.3d at 1170 (quoting Buck, 137 S. Ct. at 777).

## II.

Cromartie's Rule 60(b)(6) motion is primarily based on an affidavit authored by his co-defendant and step-brother, Thaddeus Lucas, that was written 19 years

2

after Cromartie's conviction became final and just seven days before his rescheduled execution.  He contends that Lucas' affidavit is an extraordinary circumstance justifying reopening the district court's final judgment.[1]  In his 2019 affidavit, Lucas stated that within two days after the 1994 robbery and murder he overheard another co-defendant, Corey Clark, admit to being the shooter.  Cromartie asserts that the statements Lucas makes in that affidavit show he is actually innocent of malice murder and serve to lift the statute of limitations bar to one of his penalty stage ineffective assistance of counsel claims.

The district court rejected Cromartie's argument based on Lucas' affidavit for three reasons.  First, it found that Lucas' affidavit statements were "not new reliable evidence of Cromartie's actual innocence" given that Lucas states numerous times in his affidavit that he did not see what happened inside the store and has no personal knowledge about it.  Cromartie v. Warden, GDCP, No. 7:14-cv-39 (MTT), slip op. at 5 (M.D. Ga. Nov. 12, 2019).  Second, the district court found unpersuasive Lucas' excuse for not coming forward earlier.  Id.  And third, it

_____

[1] In his Rule 60(b) motion, Cromartie also contended that there were three other extraordinary circumstances warranting relief.  First, he stated that he had a meritorious claim that his counsel was ineffective during the penalty phase of his trial.  Second, he argued that his federal habeas counsel had failed to timely raise that ineffective assistance claim in his amended § 2254 petition.  And third, he noted that the murder victim's daughter has publicly indicated that Cromartie should not be executed without DNA testing confirming his guilt.  The district court properly rejected all three of those contentions, concluding that they were "simply not extraordinary circumstances justifying the reopening of a final judgment." Cromartie v. Warden, GDCP, No. 7:14-cv-39 (MTT), slip op. at 7 (M.D. Ga. Nov. 12, 2019) (quotation marks omitted).

emphasized that "Cromartie has not been diligent with regard to this 'new' evidence." Id. We find all of the district court's reasoning persuasive and add a few thoughts of our own.

As to the affidavit, what Cromartie's present attorneys assert about it in their application to this Court for a COA needs to be clarified. They assert that "First, Mr. Cromartie's co-defendant, Thaddeus Lucas, recently revealed for the first time that he overheard their other co-defendant, Corey Clark, confess to having murdered Richard Slysz." COA App. at 1. From that one might logically infer that only recently (just days ago) did Lucas reveal he had evidence that Corey Clark might have been the shooter. One would be wrong.

The affidavit of Jessica Johnson, a defense team investigator, reveals that "[o]n previous occasions" between June 2015 and November 2019 she not only knew about but also showed Lucas his "Personal History Statement" in the May 1997 Georgia Board of Pardons and Paroles document asserting Clark was the shooter. Johnson Aff. at ¶¶ 3–5.[2] And as the district court pointed out,

---

[2] Ms. Johnson's affidavit is shrewdly drafted. It omits any mention of when the defense team first obtained a copy of the Parole Board document containing Lucas' "Personal History Statement." It states that "[o]n previous occasions" when confronted with the statement attributed to him in the document Lucas "stated that he did not remember saying that nor did he know how that information got into the statement." Johnson Aff. at ¶ 5. The Johnson affidavit omits, however, any mention of whether Lucas stated to Ms. Johnson that the information attributed to him in the document was true, regardless of how it came to be attributed to him. The affidavit says that Lucas was "reluctant to discuss the case," but not that he refused to do so. Nor does it say that he wouldn't tell her whether the statement attributed to him was the truth.

Cromartie's attorneys at that time "tendered Lucas' statement to the Parole Board at his August 2008 state habeas evidentiary hearing." Cromartie, No. 7:14-cv-39, slip op. at 6.

The Supreme Court has stated that the narrow equitable gateway through AEDPA's statute of limitations "should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" McQuiggin v. Perkins, 569 U.S. 383, 401 (2013) (quoting Schlup v. Delo, 513 U.S. 298, 316 (1995)). The statements in Lucas' affidavit, especially when considered in light of all the evidence presented at Cromartie's trial, are not nearly strong enough for that.

---

A strategic reason for omitting that fact from the Johnson affidavit is obvious. If the affidavit recounted that on the "previous occasions" when she spoke with him about it Lucas denied the truth of the statement attributed to him in the document, that would undermine his credibility. But if the affidavit recounted that he had acknowledged on any of those "previous occasions" she spoke with him that the statement attributed to him in the Parole Board document was true, the defense would have to explain why it had failed to use that information to advance its actual innocence gateway theory before. This is all the more reason to conclude that Cromartie has not acted with reasonable diligence in this regard and has not presented strong evidence of actual innocence.

In a nutshell, the document containing the "Personal History Statement" in question has been in existence for 22 years. It was tendered to the state habeas court as an exhibit 11 years ago. Cromartie's present attorneys have represented him for five years. A defense team investigator has questioned Lucas about it on multiple occasions during the last four years. His affidavit was signed and presented for the first time within the past week. To say the least, the district court did not abuse its discretion in determining that was not reasonable diligence.

The central and compelling fact that shouts from the record is that just three days before Richard Slysz was shot in the head and murdered, Cromartie committed an almost identical crime against another store clerk in the same town, shooting him in the head during a robbery.  Cromartie had walked into a convenience store and immediately shot the clerk in the head, using a pistol he had borrowed from his cousin, Gary Young.  He then attempted, but failed, to open the cash register.

Three days later, in the second robbery, which is the one that led to his death sentence, Cromartie and Clark walked into another convenience store in the same town.  The clerk was immediately shot in the head and killed, with the same pistol Cromartie had borrowed from his cousin.  The two robbers then attempted, but failed, to open the cash register.  One difference between the two robberies is that Cromartie was the sole robber in the first crime.  He was convicted based on overwhelming evidence, see Cromartie, No. 7:14-cv-39, slip op. at 5 n.6; his conviction for that crime is final; and no one else was ever convicted of the crime.

In addition to that and other evidence the district court pointed to, the testimony of Lucas himself shows that Cromartie was more than just a participant in the robbery and murder at the second convenience store.  He was the leader of the conspiracy and instigated the crime.  Lucas testified at trial that on the night of April 10, Cromartie asked him for a ride to the store.  Lucas refused.  Cromartie

6

asked again.  Lucas refused again.  Finally, the third time Cromartie asked, Lucas agreed because "if he wanted to go to the store that bad, I said, well, I'd go on and take him."

On their way to the store, Cromartie sat in the front passenger seat and Clark sat in the back.  When the prosecutor asked Lucas who told him to go to the Junior Food Store instead of the Food Max, Lucas said "Jeff."  When asked who told him where to park, Lucas said "Jeff."  When asked who told him to wait at the Providence Plaza, Lucas said "Jeff."  When asked who said "Let's go," after Cromartie and Clark got back to the car, Lucas said "Jeff."  And when asked if Clark ever told him what to do, Lucas answered "No, sir."  Cromartie was in charge.

Given this and all of the other evidence in the case, as well as the reasons stated by the district court, Cromartie has failed to present "evidence of innocence so strong" that we "cannot have confidence in the outcome of the trial." McQuiggin, 569 U.S. at 401 (quoting Schlup, 513 U.S. at 316).  No reasonable jurist could conclude that the district court abused its wide discretion in declining to take the extraordinary step of reopening its final judgment denying Cromartie's habeas petition.  See Buck, 137 S. Ct. at 777; Lambrix, 851 F.3d at 1170.

7

III.

We **DENY** Cromartie's application for a certificate of appealability, and we

**DENY** his emergency motion for a stay of execution.

MARTIN, Circuit Judge, concurring in the judgment:

I agree with the Majority that Ray Jefferson Cromartie has no procedures available to him that allow us to consider the claims he raises here. Indeed, procedural impediments have plagued him during the entire litigation of the death sentence that is planned to be carried out this evening.

No doubt, Mr. Cromartie was convicted of a horrific crime. However, before litigating Mr. Cromartie's case, the State of Georgia "offered to allow him to plead guilty, with a sentence of life with the possibility of parole after seven years." Cromartie v. GDCP Warden, No. 17-12627 at 21 (11th Cir. Mar. 26, 2018) (order denying petition for rehearing of denial of motion for certificate of appealability) (Martin, J., concurring in part and dissenting in part); see also Motion for Appellant at 41, ECF No. 15, Cromartie v. GDCP Warden, No. 17-12627 (11th Cir. Aug. 24, 2017). Beyond that, the two men who committed this crime with Mr. Cromartie have already served the sentence they received for it and been released from prison. See Amended Complaint at 7 n.4, Doc. 11, Cromartie v. Shealy, No. 7:19-CV-181 (MTT), 2019 WL 5553274 (M.D. Ga. Oct. 28, 2019). Because of procedural bars, no court—state or federal—has considered the merits of Mr. Cromartie's claim that his jury should have heard mitigating evidence about his troubled past that might have affected its view of his moral culpability for the crime that will likely result in his execution. The Supreme Court has told us that it

9

is just this type of evidence that is a "constitutionally indispensable part of the process of inflicting the penalty of death." <u>Woodson v North Carolina</u>, 428 U.S. 280, 305, 96 S. Ct. 2978, 2991 (1976).  Certainly Mr. Cromartie, as well as our criminal justice system, would have been better served if his claims had been considered on the merits.