[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14413
Non-Argument Calendar
_____

D.C. Docket No. 2:17-cv-00541-JES-CM


CARY MICHAEL LAMBRIX,

Petitioner-Appellant,

versus

SECRETARY, DOC,
FLORIDA ATTORNEY GENERAL,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(October 5, 2017)

Before ED CARNES, Chief Judge, TJOFLAT and HULL, Circuit Judges.

PER CURIAM:

Petitioner Cary Michael Lambrix, a Florida prisoner sentenced to death, has

a scheduled execution date of October 5, 2017.  On October 4, 2017, Lambrix filed

a notice of appeal.  On October 5, 2017, Lambrix filed a motion for a stay of execution in this Court.  Lambrix seeks review of the district court's order dismissing his fifth 28 U.S.C. § 2254 petition (that Lambrix filed on October 2, 2017) and denying his motion for a stay of execution.

The State has filed an emergency motion to vacate the district court's order granting Lambrix a certificate of appealability ("COA") as defective, as the district court's COA included only a procedural issue and did not specify any underlying claim of the denial of a constitutional right, much less a substantial showing of a valid claim.  Alternatively, the State has filed its merits opposition to Lambrix's claims and motion for a stay of execution.

We first set forth some of the protracted history of this case because the current matter before this Court involves the state courts' denial of Lambrix's eighth successive state post-conviction motion and the district court's denial of his fifth § 2254 petition.  This background is also necessary to put the COA issues in this matter in context.

## I.  CONVICTION AND PRIOR COLLATERAL PROCEEDINGS

Over the past 32 years, Lambrix has filed dozens of petitions, motions, original writs, and appeals in both state and federal courts challenging his two capital murder convictions and two death sentences.  We briefly review here some of the history of Lambrix's case to give his current § 2254 petition the necessary

2

context.  A detailed recitation of Lambrix's prior filings can be found in our

decision in Lambrix v. Secretary, Florida Department of Corrections, 851 F.3d

1158 (11th Cir. 2017), cert. denied sub nom. Lambrix v. Jones, __ S. Ct. __, 2017

WL 3008927 (Oct. 2, 2017) ("Lambrix V").

## A.     Capital Murder Convictions and Direct Appeal

In 1983, Lambrix brutally killed Clarence Moore and Aleisha Bryant outside

of his home by choking and stomping Bryant and hitting Moore over the head with

a tire iron.  Lambrix V, 851 F.3d at 1161.  Lambrix then ate dinner with his

girlfriend, Frances Smith, cleaned himself, borrowed a shovel, buried Moore's and

Bryant's bodies in shallow graves, and used Moore's car to dispose of the tire iron

and his own bloody shirt in a nearby stream.  Id.

In 1984, Lambrix was convicted of two counts of first-degree murder and

sentenced to death for the 1983 murders of Moore and Bryant.  Id.  In 1986, the

Florida Supreme Court affirmed Lambrix's convictions and sentences on direct

appeal.  Id.; Lambrix v. State, 494 So. 2d 1143, 1145 (Fla. 1986).

## B.     State and Federal Collateral Proceedings

Following his direct appeal, Lambrix filed his initial post-conviction motion

in state court, as well as his initial § 2254 petition in federal district court, both of

which were unsuccessful.  See Lambrix V, 851 F.3d at 1161-63; see also Lambrix

v. Singletary, 72 F.3d 1500, 1508 (11th Cir. 1996) ("Lambrix I"); Lambrix v.

3

State, 534 So. 2d 1151, 1153-54 (Fla. 1988).  Since then, Lambrix has filed eight

successive state post-conviction motions and at least ten other miscellaneous state

petitions challenging his convictions and death sentences, all of which have been

denied or dismissed.  See Lambrix V, 851 F.3d at 1163-65; Lambrix v. State, 217

So. 3d 977, 981-83 & n.3 (Fla. 2017), petition for cert. filed, No. 17-5539 (U.S.

Aug. 9, 2017); Lambrix v. Jones, __ So. 3d __, 2017 WL 4250149, at *1-2 & n.1

(Fla. Sep. 26, 2017); Lambrix v. State, __ So. 3d __, 2017 WL 4320637, at *1 (Fla.

Sep. 29, 2017), petition for cert. filed, No. 17-6222 (U.S. Oct. 3, 2017).  In

addition, Lambrix has filed three prior successive federal § 2254 habeas petitions,

all of which have been denied.  See Lambrix V, 851 F.3d at 1165-66.

This brings us to Lambrix's instant petition—his fifth[1] § 2254 petition—the

dismissal of which he now appeals.  The claims he now brings in his fifth § 2254

petition are the same claims Lambrix brought in state court in his eighth successive

state post-conviction motion.  Therefore, we outline the state courts' rulings on

Lambrix's claims in his eighth successive state motion and then turn to Lambrix's

same claims in his current and fifth § 2254 petition.

---

[1]Including his original § 2254 petition and three prior successive § 2254 petitions,
Lambrix has filed a total of four previous § 2254 petitions, making the instant petition his fifth.

4

## II.  EIGHTH SUCCESSIVE STATE POST-CONVICTION MOTION

### A.    Hurst and Florida's New Death Penalty Statute

As necessary background to Lambrix's claims, and particularly the COA issues before us, we discuss the U.S. Supreme Court's decision in Hurst v. Florida, __ U.S. __, 136 S. Ct 616 (2016), and Florida's new death penalty statute.  In Hurst, the U.S. Supreme Court applied its prior decisions in Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000) and Ring v. Arizona, 536 U.S. 584, 122 S. Ct. 2428 (2002)[2] to hold that Florida's capital sentencing scheme violated the Sixth Amendment because it required the judge alone to find the existence of an aggravating circumstance necessary for the imposition of a death sentence. Hurst, 136 S. Ct. at 624.  Following the U.S. Supreme Court's decision in Hurst, the Florida Supreme Court held that, under state law, Hurst did not apply retroactively to capital convictions where the death sentence became final prior to the issuance of Ring.  Asay v. State, 210 So. 3d 1, 22 (Fla. 2016), cert. denied, __ S. Ct. __, 2017 WL 1807588 (Aug. 24, 2017) ("Asay V").  This Court has noted that Hurst, like Ring, is not retroactively applicable to cases on collateral review under federal law.  Lambrix V, 851 F.3d at 1165 n.2.

---

[2]In Ring, the Supreme Court applied its holding in Apprendi—that any fact that increases a defendant's statutorily authorized punishment must be found by a jury beyond a reasonable doubt—to the capital sentencing context and concluded that Arizona's death penalty statute violated the Sixth Amendment because it allowed a sentencing judge, sitting alone without a jury, to determine the presence of aggravating factors necessary for the imposition of the death penalty under Arizona law. See Ring, 536 U.S. at 588, 601-09, 122 S. Ct. at 2432, 2439-43.

5

In response to <u>Hurst</u>, the Florida legislature passed Chapter 2017-1, amending Florida's death penalty statute to require a unanimous jury finding of at least one aggravating factor and a unanimous jury recommendation of death before a defendant convicted of first-degree murder may be sentenced to death. <u>See</u> Fla. Stat. § 921.141 (2017). The amended statute contains no provision regarding its retroactive application. <u>See</u> <u>id.</u>

**B.    Florida Circuit Court Order on Lambrix's Eighth State Post-Conviction Motion**

On June 2, 2017, Lambrix filed his eighth successive state post-conviction motion, raising five claims for relief based on the U.S. Supreme Court's decision in <u>Hurst</u>. <u>State v. Lambrix</u>, No. 83-CF-12, Order at 1 (Fla. 20th Cir. Ct. Sep. 5, 2017). On September 5, 2017, the state circuit court denied Lambrix's motion on the merits as to all of his claims. <u>Id.</u> at 9.

In his first claim, Lambrix argued that his death sentences violated the Sixth Amendment in light of the U.S. Supreme Court's <u>Hurst</u> decision because all of the factors necessary to impose the sentences were not found unanimously by the jury. <u>Id.</u> at 2. Lambrix contended that fundamental fairness required applying <u>Hurst</u> retroactively to his case because: (1) he was precluded from raising claims based on the non-unanimity of the jury's death recommendation in his prior proceedings because those claims were foreclosed by then-binding precedent; and (2) several prisoners whose initial death sentences had been imposed before <u>Ring</u> but had been

6

vacated on other grounds and whose new death sentences did not become final until after Ring had their new death sentences vacated based on the U.S. Supreme Court's Hurst decision. Id. at 3. The state circuit court rejected this claim, explaining that it was bound by the Florida Supreme Court's holding that Hurst did not apply retroactively to capital cases such as Lambrix's that were final before Ring. Id. at 3-5.

In his second claim, Lambrix argued that his non-unanimous death sentences violated the Eighth Amendment in light of the Florida Supreme Court's decision in Hurst v. State, 202 So. 3d 40 (Fla. 2016) (granting relief on direct appeal to a post-Ring defendant).[3] State v. Lambrix, No. 83-CF-12 at 5. The state circuit court denied this claim as well. Id. at 5-6. The state circuit court noted that the Florida Supreme Court had held in its Asay decision that Hurst v. State does not apply retroactively to death sentences final before the U.S. Supreme Court's decision in Ring, and in Asay VI had rejected the same Eighth Amendment claim that Lambrix was raising. See State v. Lambrix, No. 83-CF-12 at 5-6; Asay v. State, __ So. 3d __, 2017 WL 3472836, at *6-7 (Fla. Aug. 14, 2017) ("Asay VI").

In his third claim, Lambrix argued that the Florida Supreme Court's decisions permitting partial retroactivity of Hurst "inject[ed] arbitrariness into the

---

[3]Hurst v. State is the case that was before the Florida Supreme Court on remand from the U.S. Supreme Court's decision in Hurst. 202 So. 3d at 43. In Hurst v. State, on direct appeal, the Florida Supreme Court vacated Hurst's death sentence, finding a Sixth Amendment violation that, it determined, was not harmless under the facts and circumstances of his case. Id. at 69.

7

capital sentencing scheme," thereby violating the Eighth Amendment.  Id. at 6.

The state circuit court denied Lambrix's claim, determining that it was bound by

the Florida Supreme Court's rulings that Hurst does not apply retroactively to pre-

Ring cases.  Id. at 7.

In his fourth claim, Lambrix contended that the Florida Supreme Court's

decisions in Hurst v. State and Perry v. State, 210 So. 3d 630 (Fla. 2016), were

new law that would apply at resentencing, and as a result, the court was required to

reconsider all of Lambrix's prior post-conviction claims in light of the new

requirement that all jury findings must be unanimous.  Id.  The state circuit court

denied this claim, again noting that Hurst did not apply retroactively to Lambrix's

case.  Id. at 7-8.  The circuit court also noted that Lambrix cited no legal authority

permitting, much less requiring, the reconsideration of his previously denied post-

conviction claims.  Id. at 7.

Finally, in his fifth claim, Lambrix argued that the Eighth and Fourteenth

Amendments of the U.S. Constitution, as well as the Florida Constitution, required

the retroactive application of the substantive right established by Chapter 2017-1 to

his case.  Id. at 8.  Lambrix also argued that the Florida legislature intended

Chapter 2017-1, which amended Florida's death penalty statute to require a

unanimous jury verdict and findings, to apply retroactively.  Id.  Lambrix further

contended that Florida courts had ordered resentencing under the new statute in

8

some cases and that he would be treated differently if his sentences were not also vacated.  Id.

The state circuit court explained that, contrary to Lambrix's assertions, nothing in the legislative history indicated that the legislature intended Chapter 2017-1 to apply retroactively, nor did Lambrix cite any legal authority applying Chapter 2017-1 to cases that were final before the statute was amended.  Id.  The state circuit court further noted that the Florida Supreme Court had rejected the same claim regarding Chapter 2017-1 in Asay VI.  Id.

Accordingly, because Lambrix's death sentences were legal when they were imposed and Hurst did not apply retroactively to his case, the state circuit court concluded that his sentences remained legal and denied his eighth successive post-conviction motion.  Id. at 8-9.

## C.    Florida Supreme Court Decision

On September 29, 2017, the Florida Supreme Court affirmed the circuit court's denial of Lambrix's eighth successive state post-conviction motion on the merits.  Lambrix v. State, __ So. 3d __, 2017 WL 4320637, at *1 (Fla. Sep. 29, 2017), petition for cert. filed, No. 17-6202 (U.S. Oct. 3, 2017).  On appeal, Lambrix argued, inter alia, that: (1) his sentences of death are unconstitutional under new Chapter 2017-1, Laws of Florida, which requires a unanimous jury recommendation for death; (2) his death sentences violate the Eighth Amendment;

9

and (3) the Florida Supreme Court's decisions regarding the non-retroactivity of Hurst v. Florida and Florida's new death penalty statute violate his rights to Equal Protection, Due Process, and under the Eighth Amendment. Id. at *1.

First, regarding Lambrix's claims based on the U.S. Supreme Court's decision in Hurst, the Florida Supreme Court explained that it already had held, in a prior opinion in Lambrix's case, that Lambrix was not entitled to relief based on the U.S. Supreme Court's decision in Hurst. Id. (citing Lambrix v. State, 217 So. 3d 977, 989 (Fla. 2017)). In that case, Lambrix had argued that, in light of the U.S. Supreme Court's decision in Hurst, his death sentences violated the Sixth Amendment. Lambrix, 217 So. 3d at 988-89. Lambrix contended that he was entitled to retroactive application of Hurst and that his sentences must be vacated. Id. at 989. The Florida Supreme Court rejected Lambrix's claim because, under its prior decision in Asay V, Lambrix was not entitled to relief under Hurst because his convictions were final in 1986. Id. In Asay V, the Florida Supreme Court had held that, under state law, Hurst did not apply retroactively to capital convictions where the death sentence became final prior to the issuance of Ring in 2002. Asay V, 210 So. 3d at 22.

Second, the Florida Supreme Court rejected Lambrix's Eighth Amendment, Due Process, and Equal Protection claims, which were "based on the arbitrariness of [its] retroactivity decisions" with regard to Hurst and the passage of Chapter

10

2017-1.  Lambrix, 2017 WL 4320637, at *1-2.  The Florida Supreme Court concluded that those claims were due to be denied in light of its decisions and for the multiple reasons set out in Hitchcock v. State, __ So. 3d __, 2017 WL 3431500 (Fla. Aug. 10, 2017), petition for cert. filed, No. 17-6180 (U.S. Sep. 29, 2017), and Asay VI.  Lambrix, 2017 WL 4320637, at *1.

In Asay VI, the petitioner raised an Eighth Amendment challenge to his non-unanimous death sentences based on the Florida Supreme Court's decision in Hurst v. State and the Florida legislature's passage of Chapter 2017-1, which amended Florida's death penalty statute in response to the Florida Supreme Court's decision in Perry v. State.  Assay VI, 2017 WL 3472836, at *6-7.  In essence, Asay contended that the Florida Supreme Court's refusal to apply its Hurst v. State decision and Chapter 2017-1 retroactively to him was arbitrary and capricious.  Id. at *6-7.  The Florida Supreme Court rejected those claims, noting that, in one of Asay's prior cases, it had rejected a nearly identical statutory claim regarding a 2016 amendment to Florida's death penalty statute, and concluding that Asay's retroactivity claims were controlled by its prior decisions, including Hitchcock, which denied retroactive application of Hurst to defendants whose death sentences were final prior to Ring.  Id. at *7.

### III.  CURRENT & FIFTH §2254 PETITION

**A.     Lambrix's Current § 2254 Petition**

On October 2, 2017, Lambrix filed his current and fifth § 2254 petition in the district court.  Lambrix simultaneously filed an application for a stay of execution based on his § 2254 petition.  Lambrix contended that his federal Due Process, Equal Protection, and Eighth Amendment rights were violated by the state court's failure to give retroactive effect to (1) Chapter 2017-1, a revised version of Florida Statute § 921.141 (Florida's capital sentencing statute), and (2) the U.S. Supreme Court's decision in Hurst.

In the present case, Lambrix's § 2254 petition claims that Chapter 2017-1 established a new substantive right to a life sentence absent a unanimous jury recommendation of death and that the Florida legislature intended this change to apply retroactively.  Lambrix also argued that his present § 2254 petition was not "second or successive" within the meaning of 28 U.S.C. § 2244(b) because his claim did not become ripe until March 13, 2017, the date on which Chapter 2017-1 took effect.  In addition, Lambrix contended that the Florida Supreme Court's refusal in 2017 to apply Hurst retroactively to him, but applying it to capital defendants sentenced after Ring violates the Eighth Amendment and his constitutional rights to Due Process and Equal Protection.  Lambrix argued his statutory claim was not ripe until recently.

12

**B.    District Court's Order**

On October 2, 2017, the district court dismissed Lambrix's petition for lack of jurisdiction, rejecting his assertion that his current § 2254 petition was not successive.  The district court acknowledged that not all second-in-time § 2254 petitions are "successive" within the meaning of § 2244(b) but concluded that Lambrix's petition was properly classified as successive.  The district court explained that Lambrix's ripeness argument relied primarily on Panetti v. Quarterman, 551 U.S. 930, 127 S. Ct. 2842 (2007), in which the U.S. Supreme Court held that the statutory bar on second or successive applications did not apply to claims regarding a prisoner's competency to be executed because such claims do not become ripe until execution is imminent.

The district court distinguished Lambrix's claims from those at issue in Panetti because the claims in Panetti involved facts concerning a prisoner's mental state, which can change significantly over time, and therefore can be assessed only when execution is close at hand.  By contrast, Lambrix argued that he was entitled to file a successive § 2254 petition in light of a change in the law, rather than a change in the factual circumstances of his case.  The district court noted that the facts of Lambrix's case remained the same and that his new claim was based "solely upon the clarification of a legal rule that was established many years

13

ago"—namely, the rule announced in Apprendi and extended to the capital sentencing context in Ring.

In addition, as to Lambrix's Hurst claim, the district court pointed out that Hurst did not even announce a new rule. Instead, in Hurst, the Supreme Court only applied the Apprendi and Ring standard to Florida's capital sentencing scheme. The district court reasoned that Hurst "neither expanded the Apprendi/Ring rule nor announced a new rule."

As a result, the district court dismissed Lambrix's petition and denied his motion for a stay of execution, without prejudice to their renewal should this Court grant Lambrix leave to file a successive § 2254 petition. To date, Lambrix has not filed an application for leave to file a successive § 2254 petition with this Court, which, if he did, would be his fourth attempt to file a successive § 2254 petition.

After the district court dismissed his petition, Lambrix moved for a COA in the district court, and the district court granted his motion on the procedural issue of whether it had "correctly concluded that it lacked jurisdiction to consider his October 2, 2017 habeas petition" because it was impermissibly successive.

14

## IV.  COA REQUIREMENTS

This case is before us on a COA granted by the district court.  The COA issued by the district court is defective.  We first review the requirements for a COA and then explain why the district court's COA is defective.

### A.    COA Standard

The standard for issuing a COA is set forth in 28 U.S.C. § 2253, which provides that a COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Supreme Court recently provided guidance on this standard in Buck v. Davis, 580 U.S. ___, 137 S. Ct. 759 (2017).  In Buck, the Supreme Court explained that under § 2253(c)(2) the threshold and only question at the COA stage "is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'"  580 U.S. at ___, 137 S. Ct. at 773 (quoting Miller-El v. Cockrell, 537 U.S. 322, 327, 123 S. Ct. 1029, 1034 (2003)).  When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, the prisoner in order to obtain a COA, still must show both (1) "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and (2) "that jurists of reason would find it debatable whether

15

the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604 (2000). "Thus, when a COA request concerns a procedural ruling, the required showing must include both the procedural issue and the constitutional issue." Lambrix V, 851 F.3d at 1169; see also Slack, 529 U.S. at 484, 120 S. Ct. at 1604; Buck, 580 U.S. at ___, 137 S. Ct. at 777.

The Supreme Court has directed that "issuance of a COA must not be pro forma or a matter of course." Miller-El, 537 U.S. at 337, 123 S. Ct. at 1040. The Supreme Court also directed that without a COA "the Court of Appeals may not rule on the merits" and must decide this threshold question without full consideration of the facts and legal bases supporting the claims, although the denial of a COA "necessarily means the prisoner has failed to show that his claim is meritorious." Buck, 580 U.S. at ___, 137 S. Ct. at 773.

## B.    District Court's COA Is Defective

Here, the district court did not state that Lambrix had made a substantial showing of a denial of a constitutional right, much less specify the underlying constitutional issue on which he had made such a showing, which are requirements for issuance of a COA. 28 U.S.C. § 2253(c)(2), (3); Slack, 529 U.S. at 484, 120 S. Ct. at 1604. For that reason, the COA the district court issued is defective. See Slack, 529 U.S. at 484, 120 S. Ct. at 1604; see also 28 U.S.C. § 2253(c)(2) ("A

16

certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.").

We have the authority and duty to vacate a COA in this circumstance. See Bell v. Fla. Att'y Gen., 614 F.3d 1230, 1231-32 (11th Cir. 2010) (vacating a COA as improvidently granted because "the district court erred in failing to specify whether jurists of reason would find it debatable that [the petitioner stated] a valid claim of the denial of a constitutional right"); see also Lambrix V, 851 F.3d at 1169 ("[W]hen a COA request concerns a procedural ruling, the required showing must include both the procedural issue and the constitutional issue."); Damren v. Florida, 776 F.3d 816, 820 (11th Cir. 2015) (stating that the district court did not comply with § 2253(c)(3) where it "issued a COA that identified a debatable procedural issue—whether equitable tolling was warranted under the circumstances of [the petitioner's] case—but that did not specify the underlying constitutional issue or issues on which [the petitioner] had made a substantial showing of a denial of his rights"). Accordingly, we grant the State's emergency motion to vacate and vacate the COA granted by the district court.

## C.    Construed Motion for a COA in this Court

Nonetheless, we can and will construe Lambrix's notice of appeal as an application for a COA from this Court to address these issues: (1) whether Lambrix's current § 2254 petition is impermissibly successive; and (2) whether the

17

Florida Supreme Court's retroactivity decision—that <u>Hurst</u> and the new Fla. Stat. § 921.141 do not apply retroactively to Lambrix—violates his rights to Due Process, Equal Protection, and the Eighth Amendment's prohibition against cruel and unusual punishment.  As explained later, to obtain a COA as to the second issue, Lambrix must show that jurists of reason would find it debatable that the Florida Supreme Court's merits rejection of Lambrix's constitutional claims resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law.

But we first briefly discuss the procedural issue as to successive § 2254 petitions.

## V.  PROCEDURAL ISSUE

### A.    Section 2244(b)

A claim presented in a second or successive § 2254 petition is subject to dismissal unless the petitioner shows that: (1) "the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable"; or (2) "the factual predicate for the claim could not have been discovered previously through the exercise of due diligence," and "the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that,

18

but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."  28 U.S.C. § 2244(b)(2).

A state habeas petitioner seeking to file a second or successive § 2254 petition must seek authorization from this Court before the district court may consider his petition.  28 U.S.C. § 2244(b)(3)(A).  When a petitioner fails to seek or obtain such authorization, the district court lacks jurisdiction to consider the merits of the petition.  Burton v. Stewart, 549 U.S. 147, 157, 127 S. Ct 793, 799 (2007).

The State argues that the district court did not err in dismissing Lambrix's current § 2254 petition for lack of jurisdiction because this is Lambrix's fourth successive § 2254 petition.  Therefore, the State argues that Lambrix was required to seek this Court's authorization before filing his current petition in the district court, which he did not do.  See 28 U.S.C. § 2244(b)(3)(A).

## B.    Panetti v. Quarterman

In response, Lambrix attempts to avoid § 2244's ban on successive petitions by relying on Panetti v. Quarterman.  In Panetti, the Supreme Court held the statutory bar on successive habeas petitions did not apply to claims under Ford v. Wainwright, 477 U.S. 399, 106 S. Ct. 2595 (1986), regarding a prisoner's competency to be executed because such claims do not become ripe until execution is imminent.  See Panetti, 551 U.S. at 943-47, 127 S. Ct. at 2852-55.

19

The State argues that the mental competency exception in <u>Panetti</u> applies only in the "unusual posture" where a claim is based on <u>facts</u> that change over time, such that the claim may only properly be assessed when the petitioner's execution is close at hand.  <u>See</u> <u>id.</u> at 945-47, 127 S. Ct. at 2853-55.

The State further contends: (1) that the factual basis for Lambrix's present claims—the imposition of his death sentences based on a non-unanimous jury recommendation—has not changed since his convictions and sentences became final in 1986; (2) that Lambrix's present claims are based on the change in Florida capital sentencing <u>law</u> occasioned by the U.S. Supreme Court's decision in <u>Hurst</u>; (3) that § 2244(b) makes clear that a claim based on a change in the law may only be raised in a successive § 2254 petition when that claim is based on a new, previously unavailable rule of constitutional law that has been made retroactive to cases on collateral review by the U.S. Supreme Court; and (4) that Lambrix's claims do not meet that requirement because <u>Hurst</u>, like <u>Ring</u> itself, does not apply retroactively to cases on collateral review.

We need not decide the issue of whether Lambrix's current petition is second or successive and subject to the strictures of § 2244(b), or whether an exception applies that is akin to the one in <u>Panetti</u>.  Assuming without deciding that the current petition is not a second or successive one for § 2244(b) purposes, we

20

still must deny Lambrix's construed motion for a COA and his motion for a stay of execution.  We explain why.

## VI.  THE CONSTITUTIONAL ISSUES

### A.    AEDPA Deference

As outlined above, the Florida Supreme Court has denied on the merits Lambrix's constitutional claims, which are all based on the non-retroactivity of the U.S. Supreme Court's Hurst decision and Florida's new death penalty statute.[4] Under 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), our review of Lambrix's current § 2254 petition is limited.  Where the state courts have rejected the petitioner's claim of the denial of a constitutional right, the deference mandated by § 2254(d)(1) applies in determining whether a COA should be granted.  See Tennard v. Dretke, 542 U.S. 274, 282, 124 S. Ct. 2562, 2569 (2004) (stating that the petitioner's arguments for the issuance of a COA "ultimately must be assessed under the deferential standard required by 28 U.S.C. § 2254(d)(1)").

Under § 2254(d)(1), a federal court may grant a writ of habeas corpus to a state prisoner on a claim adjudicated on the merits in a state court only where the state court's decision "was contrary to, or involved an unreasonable application of,

---

[4]Both the Florida state collateral trial court and the Florida Supreme Court rejected all of Lambrix's constitutional claims on the merits.  For that reason, this case does not present any issues arising under Wilson v. Warden, Georgia Diagnostic Prison, 834 F.3d 1227, 1230 (11th Cir. 2016), cert. granted sub nom. Wilson v. Sellers, 137 S. Ct. 1203 (2017).

21

clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

A state court's decision rises to the level of an unreasonable application of federal law only where the ruling is "objectively unreasonable, not merely wrong; even clear error will not suffice."  Virginia v. LeBlanc, 582 U.S. __, __, 137 S. Ct. 1726, 1728 (2017) (per curiam) (quoting Woods v. Donald, 575 U.S. __, __, 135 S. Ct. 1372, 1376 (2015) (per curiam)).  This standard is "meant to be" a difficult one to meet.  Harrington v. Richter, 562 U.S. 86, 102, 131 S. Ct. 770, 786 (2011).  AEDPA thus "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt."  Trepal v. Sec'y, Fla. Dep't of Corr., 684 F.3d 1088, 1107 (11th Cir. 2012) (quoting Hardy v. Cross, 565 U.S. 65, 66, 132 S. Ct. 490, 491 (2011) (per curiam)).

The phrase "clearly established Federal law" means the holdings of the U.S. Supreme Court that were in existence at the time of the relevant state-court decision.  See Harrington, 562 U.S. at 100, 131 S. Ct. at 785; Thaler v. Haynes, 559 U.S. 43, 47, 130 S. Ct. 1171, 1173 (2010) ("A legal principle is 'clearly established' within the meaning of [§ 2254(d)(1)] only when it is embodied in a holding of [the Supreme] Court."); Williams v. Taylor, 529 U.S. 362, 412, 120 S. Ct. 1495, 1523 (2000) ("[T]he phrase 'clearly established Federal law, as

22

determined by [this] Court' refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." (first alteration in original)).

## B.    The COA Issue

Therefore, assuming as we have that this petition is not to be treated as a second or successive one subject to the requirements of § 2244(b), the COA issue becomes whether jurists of reason would find it at least debatable that the Florida courts' rejection of Lambrix's constitutional claims resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law, as determined by the U.S. Supreme Court.  See 28 U.S.C. § 2254(d)(1).

## C.    Non-retroactivity of Hurst

No U.S. Supreme Court decision holds that its Hurst decision is retroactively applicable.  In Lambrix V, this Court already indicated that Hurst is not retroactively applicable on collateral review under federal law, and we hold here that no reasonable jurist would find that issue debatable.  Lambrix V, 851 F.3d at 1165 n.2.  More importantly, Lambrix's two capital convictions and death sentences became final in 1986, sixteen years before Ring was decided.  The Supreme Court has held that Ring does not apply retroactively to cases on collateral review.  See Schriro v. Summerlin, 542 U.S. 348, 358, 124 S. Ct. 2519, 2526 (2004) (holding that Ring does not apply retroactively under federal law to

23

death-penalty cases already final on direct review). Ring applied only prospectively, and thus, defendants who were convicted before Ring were treated differently too by the Supreme Court. The Florida Supreme Court's ruling—that Hurst is not retroactively applicable to Lambrix—is fully in accord with the U.S. Supreme Court's precedent in Ring and Schriro.

For all of these reasons, jurists of reason would not find this proposition debatable: the Florida courts' rejection of Lambrix's constitutional claim was not contrary to nor an unreasonable application of a holding of a Supreme Court decision.[5]

## D.    Non-retroactivity of Florida's Statute

Similarly, no U.S. Supreme Court decision holds that the failure of a state legislature to make revisions in a capital sentencing statute retroactively applicable to all of those who have been sentenced to death before the effective date of the new statute violates the Equal Protection Clause, the Due Process Clause, or the Eighth Amendment.

There is even one Supreme Court decision inconsistent with Lambrix's Equal Protection claim. See Dobbert v. Florida, 432 U.S. 282, 301, 97 S. Ct. 2290,

---

[5]In its reply brief, the State aptly points out that the Florida Supreme Court has been consistent in denying Hurst relief to those defendants whose convictions and sentences were final before Ring was decided on June 24, 2002. Thus far, the Florida Supreme Court has denied Hurst relief in more than 20 cases based solely on the undisputed fact that the judgments were finalized prior to the decision in Ring. See State's Reply Brief at 5 n.5 (listing cases). Lambrix is being treated exactly the same as similarly situated convicted murderers.

2302 (1977).  After the Supreme Court's decision in Furman v. Georgia, 408 U.S. 238, 92 S. Ct. 2726 (1972), Florida enacted a new statute which, coupled with a Florida Supreme Court decision, divided those who had committed murders before Furman into two categories.  Dobbert, 432 U.S. at 288, 97 S. Ct. at 2296.  One category consisted of all those who had already been tried, convicted, and sentenced to death at the time of Furman.  See id. at 301, 97 S. Ct. at 2302.  The Florida Supreme Court decision reduced their sentences to life imprisonment.  Id. The other category of pre-Furman murderers were those who had not yet been tried at the time of the Furman decision and the new Florida statute enacted in response to it.  See id.  Those in that category were subject to being sentenced to death.  See id.  Dobbert was one of them, and he was sentenced to death.  Id.  The Supreme Court rejected Dobbert's Equal Protection claim, reasoning that "petitioner is simply not similarly situated to those whose sentences were commuted.  He was neither tried nor sentenced prior to Furman, as were they."  Id.  After all, "Florida obviously had to draw the line at some point."  Id.  That same reasoning applies here.

In short, jurists of reason would not find this proposition debatable: the Florida court's rejection of Lambrix's constitutional-statutory claim was not contrary to, or an unreasonable application of, the holding of a Supreme Court decision.

25

## VII.  CONCLUSION

The State's motion to vacate the district court's COA is GRANTED.

Lambrix's motion for us to issue a COA, construed from his notice of appeal, is

DENIED.  Because Lambrix has not met the requirements for a COA, his motion

for a stay of execution is also DENIED.[6]

**MOTIONS FOR COA AND STAY DENIED, and APPEAL**

**DISMISSED.**

---

[6]The standard for a stay is, in part, a showing of a substantial likelihood of success on the merits of the claims, which is a higher standard than the one for a COA.  Because Lambrix has not met the COA standard, he necessarily has not met the standard for a stay.  See e.g., Gore v. Crews, 720 F.3d 811, 817 (11th Cir. 2013) (denying motion for stay of execution when petitioner's claim was not debatable among jurists of reason and the district court should not have granted a COA).

26